It follows that the judgment is affirmed. All concur.

---

ST. LOUIS ELECTRIC TERMINAL RAILWAY COMPANY, Appellant, v. JAMES D. MacADARAS et al., Appellants.

Division One, April 13, 1914.

1. CONDEMNATION: Two Stages. Condemnation proceedings have two stages or hearings: one, upon the sufficiency of the petition and the right to condemn; the other, upon the compensation to be paid for the property taken or damaged.

2. ———: Right to Condemn: Interurban Railway. Upon the authority of State ex rel. v. Williams, 227 Mo. l. c. 47, it is *held* that the St. Louis Electric Terminal. Railway Company has the right to condemn property for its right of way and depot purposes, whether it be a railroad company under the steam railroad statutes, or an interurban railway company, for if the latter it was by Laws 1907, p. 174, given the same rights and power as steam railroads in the matter of condemning property for railroad purposes.

3. ———: ———: Abandonment of Charter Route: As Affected by Prohibition Writ Upholding Right to Condemn. The refusal of a writ of prohibition applied for by defendants, directed to the trial court and refused on the ground that the plaintiff as an interurban railway had the statutory power to condemn property for depot purposes, does not preclude the defendants from urging the defense of abandonment pleaded in their answer, to-wit, that the plaintiff had abandoned a material portion of the route of its railway, as described in its charter, and therefore was without authority of law to condemn any property for any purpose.

4. ———: Measure of Damages: Value Enhanced by Plaintiff's Near-by Depot. When the whole property is being taken the jury should not be authorized to consider either enhancements or depreciation in the value of the property brought about by the construction of other improvements , by plaintiff on near-by property. Where the building of railway tracks, switches and passenger and freight depots in a city is a part and parcel of one unified scheme of continuous construction, and the freight depot is built before the time comes for the jury to assess defendants' damages caused by the taking of all their near-by property for passenger-depot purposes, the jury should not be instructed to take into consideration any enhancement or depreciation in the value of defendants' property caused by the location and construction of said freight depot.

5. ———: ———: ———: Evidence: Contract of Attempted Purchase. A contract of purchase of the property sought to be condemned for passenger purposes, made by defendants' agent and disavowed by them, is not competent evidence on the question of value, but is competent as tending to show that the whole improvement was a part of one general and continuous plan of construction and that such plan included the acquirement of the property in question, and is material if the defendants claim that the building of the passenger and freight depots were independent acts and that they are therefore entitled to any enhancement in the value of their

257 Mo. 29

property caused by the construction of the freight depot in the
vicinity.

6. ――――: ――――: **Value of Other Property as Standard.** Evi-
dence of the value of other property on the same street, dis-
similar to the property in question, is incompetent as a standard
of value, in the condemnation proceeding.

Appeal from St. Louis City Circuit Court.—*Hon.*
*George H. Shields,* Judge.

REVERSED AND REMANDED *(with directions)*

*John S. Leahy* and *Block & Sullivan* for defend-
ants.

(1)  The plaintiff is an interurban electric rail-
road within the meaning of Sec. 3228, R. S. 1909.   State
ex rel. v. Williams, 227 Mo. 36.   (2)  The proceeding
seeks the condemnation of the property for depot pur-
poses, within the meaning of Secs. 3073 and 2369, R. S.
1909.   (3)  A grant of the State's power of eminent
domain is strictly construed, and unless the power
sought to be exercised has been expressly conferred,
it does not exist.   Kansas City v. Oil Co., 140 Mo.
64; Schmidt v. Duisnore, 42 Mo. 234; St. Louis
Co. v. Railroad, 138 Mo. 598; Southwest Co. v. Scheu-
rich, 174 Mo. 241; 15 Cyc. 567; 1 Lewis on Eminent Do-
main, secs. 388, 371.   (4)  The powers of railroad com-
panies to condemn property for construction of the
road, on the one hand, and for depot grounds on the
other, have for many years been separately dealt with
by the General Assembly.   R. S. 1909, secs. 3049, 3073,
2369, 3076.   (5)  The Act of 1907 (R. S. 1909, sec.
3228) confers upon interurban electric lines the power
to condemn lands for right of way only, and such a
corporation is without power to condemn lands for de-
pot purposes.   (a)  The General Assembly, familiar
with the various rights of eminent domain conferred
upon railroad companies, saw fit to confer only one of

these powers on electric interurban lines.    Statutes,
supra; R. S. 1909, sec. 3228.    (b)   This act is a spe-
cial act defining the powers of eminent domain to be
exercised by such corporations, and is controlling in
that field.    State v. De Bar, 58 Mo., 308; State v. Green,
87 Mo. 587; Ruschenberg v. Southern Co., 161 Mo. 85;
State ex inf. v. Dabbs, 182 Mo. 366; State ex rel. v.
Foster, 187 Mo. 610; Gikeson v. Railroad, 222 Mo. 204;
Joffee ex parte, 46 Mo. App .367; 1 Sutherland on Stat-
utory Construction (2 Ed.), sec. 275, p. 532; 2 Id., sec.
491, p. 919.    (c)   The expression "right-of-way", in
the act, does not include "depot purposes."    Railroad
v. People, 195 Ill. 190; Railroad v. Gooding, 6 Idaho,
776; Joy v. St. Louis, 138 U. S. 44; Railroad v. Ball,
108 Ky. 256; Keener v. Railway, 31 Fed. 128; Postal
Co. v. Southern Co., 90 Fed. 32; Acord v. Railroad, 113
Mo. App. 99; Plunkett v. Railroad, 79 Wis. 225.    (d)
The expression of the one power in the Act of 1907 is
the exclusion of others.    2 Sutherland on Statutory
Construction, sec. 493; Maguire v. Savings Assn., 62
Mo. 346; State ex rel. v. Laughlin, 73 Mo. 448; State ex
rel. v. Woodson, 128 Mo. 514; State ex rel. v. Stobie,
194 Mo. 57; State ex rel. v. Withrow, 133 Mo. 513.    (e)
The General Assembly of 1911 refused to amend the
act, as requested by plaintiff's counsel, so as to en-
large the powers thereby conferred to equal those con-
ferred by the general statutes on railroad companies
in general.    House Bill No. 1034, General Assembly of
1911.    (6)   The plaintiff has so far abandoned its
charter powers and obligations as to be without the
power of eminent domain for any purpose.    R. S. 1909,
secs. 3049, 3074; Laws 1877, p. 187, sec. 4; Railroad v.
Davis, 197 Mo. 674; R. S. 1909, sec. 3066; 2 Lewis on
Eminent Domain, secs. 505, 402; Doughty v. Railroad,
7 N. J. Eq. 51; United Co. v. National Co., 52 N. J. L.
97.

*Edward C. Crow* for plaintiff.

(1) The plaintiff is a railroad company organized under the same law as roads operated by steam and has "all the power possessed by steam railroads to condemn property for its use." State ex rel. v. Williams, 227 Mo. 47. (2) The proceedings herein seek to condemn the property for right of way and for depot purposes and for receiving and discharging passengers and freight and express in St. Louis, Missouri. And this court held in the Greffet case that this plaintiff had the right to condemn property for right of way and "to be used to erect depots and places to receive and discharge freight and passengers and express in the City of St. Louis." State ex rel. v. Williams, 227 Mo. 44. (3) The amendment of 1907 which provides "that any corporation now existing, or that may hereafter be incorporated, for the purpose of constructing, building, owning, operating and maintaining an interurban electric railroad, shall have and possess the same right and be subject to the same liabilities and shall be governed by the same powers, laws, limitations, restrictions and proceedings now governing railroads in article 2, chapter 12, R. S. 1899, for the condemnation of lands for right of way, and the fencing thereof," gave the power to electric railroads to condemn property not alone for right of way but for all railroad uses, including ground to be used for a depot. State ex rel. v. Williams, 227 Mo. 47. (4) In Missouri a railroad company organized under the law for organizing steam or commercial railroads may condemn land for depot. Muder v. Railroad Co., 49 Mo. 165. Sections 3049 and 2369 and 3228 and 3073 relating to the condemnation of land by a steam road and electric road for right of way, side-tracks and switches and depots are not independent statutes and unrelated, but they are interdependent and related and are *in pari materia* with each other. State ex rel. v. Williams, 227 Mo. 47.

(5)   There was no abandonment of plaintiff's charter
route.   Mere nonuser will not constitute an abandon-
ment.   The intent to abandon must be shown by une-
quivocal and decisive acts.   Scarritt v. Railroad, 148
Mo. 676; Investment Co. v. Railroad, 108 Mo. 50; 2
Lewis on Eminent Domain (3 Ed.), sec. 842, p. 1502;
Railroad v. Railroad, 129 Mo. 62; Railroad v. Brad-
bury, 106 Mo. App. 450; 33 Cyc. 222.   (6)   The conten-
tion of defendants' counsel that plaintiff abandoned
its right to build a railroad over its chartered route
beyond Twelfth street and Lucas avenue constitutes a
collateral attack on plaintiff's charter and this cannot
be done in a condemnation proceeding.   Railroad v.
Railroad, 161 Mo. 288; State ex rel. v. Williams, 227
Mo. 49.   (7)   Instruction 11, given for defendant-ap-
pellant is erroneous for the reason that it is a comment
on the evidence and singles out and gives undue prom-
inence to the construction of the freight depot or sta-
tion of appellant in proximity to the property of de-
fendants and authorized the jury to take into consider-
ation any advancement of the value of defendants'
property caused thereby in estimating the fair market
value of their property.   Railroad v. Stock Yards Co.,
120 Mo. 541; State v. Fairbanks, 121 Mo. 148; Liese v.
Meyer, 143 Mo. 562; Gharst v. Transit Co., 115 Mo.
412; Gibler v. Railroad, 129 Mo. App 102; Benjamin
v. Railroad, 50 Mo. App., 602; Spolm v. Railroad, 87
Mo. 411.   (8)   Building of road and freight and pas-
senger station constituted one improvement and val-
ue of condemned property should have been fixed in-
dependent of effect on value of the building of the
road and the erection of the freight and passenger
depots.   "The taking was an inseparable part of the
improvement out of which the expected increase in val-
ue was to come and on account of which there was a
general increase in price of real estate in the vicinity."
Kerr v. Park Commrs., 117 U. S. 379; Mowry v. Boston,
173 Mass. 425; Ry. & Nav. Co. v. Realty Co., 115 La.

328; 2 Lewis' Eminent Domain, 745; Sargeant v. Merrimac, 196 Mass. 171, 11 L. R. A. (N. S.) 1002; Benton v. Brookline, 151 Mass. 250; May v. Boston, 158 Mass. 121; Bowdlich v. Boston, 164 Mass. 107; Shoemaker v. United States, 147 U. S. 282. (9) The court committed prejudicial error against the plaintiff when it admitted the testimony of defendants' witnesses as to the value of property on Washington avenue as a standard by which to fix the value of the property of the defendants on Lucas avenue, because the two classes of property were of entirely dissimilar kind. 2 Lewis on Eminent Domain (3 Ed.), sec. 662, p. 1138. (10) The court committed prejudicial and reversible error against the plaintiff when it refused to admit in evidence the agreement signed by R. D. Smith for plaintiff and John S. Leahy for defendants for the purpose of showing that the defendants had offered to take a given sum of money for the property sought to be condemned. Springfield v. Smook, 68 Mo. 394; Webster v. Railroad, 116 Mo. 120. (11) The bridge, the road and the freight and the passenger depots were all located and built as one unit of construction and carried out simultaneously as part of one general plan of improvement. Therefore the general rule applies that no increase in value of land caused by the location of a railroad and depots can be considered in condemnation proceedings in fixing the value of the property taken. Therefore instruction 9 given by the court for the defendants was erroneous in that it only eliminated from the consideration of the jury in fixing the value of the defendants' property any enhanced value caused by the erection of the passenger station of the plaintiff. 158 Mass. 29; Railroad v. Stock Yards, 120 Mo. 553; Railroad v. Christal, 25 Mo. 546; 2 Lewis on Eminent Domain (3 Ed.), sec. 745.

*Block & Sullivan* in reply for defendants.

(1) On exceptions to the report of commissioners in cases of this character, the jury are to value the property as of the date the commissioners reported, where, as here, the condemnor pays into court the award of the commissioners. Railroad v. Fowler, 113 Mo. 472; In re Forsythe Boulevard, 127 Mo. 421; Railroad v. Knapp-Stout & Co., 160 Mo. 409; Railroad v. Stewart, 201 Mo. 497; Railroad v. Town Site Co., 103 Mo. 460. (2) The defendants were entitled to the enhanced value of the property occasioned by improvements made by the plaintiff in the vicinity, and Instruction 11 to that effect was proper. Stafford v. Providence, 10 R. I. 567; In re Commissioners, 19 R. I. 382; El Paso v. Coffin, 88 S. W. (Tex. Civ. App.) 502; Sanitary Dist. v. Loughran, 160 Ill. 370; Terminal Co. v. Thrower, 71 S. E. (Ga.) 908; Sunday v. Railroad, 57 So. (Fla.) 351; Bridge Co. v. Scott, 147 S. W. (Ark.) 440; 2 Lewis on Eminent Domain (3 Ed.), sec. 695, 745, 747, 757; 15 Cyc. 687; Railroad v. Town Site Co., 103 Mo. 462. (3) Instruction 11 must be read as a part of the whole charge. State v. Weisman, 238 Mo. 558; Montgomery v. Railroad, 181 Mo. 513; Gibler v. Railroad, 203 Mo. 222. (4) This instruction did not single out any particular fact to the jury. Railroad v. Waldo, 70 Mo. 631; Railroad v. McGrew, 104 Mo. 292; Railroad v. Clark, 121 Mo. 187; Railroad v. George, 145 Mo. 42; Railroad v. Shoemaker, 160 Mo. 432; Railroad v. Mendosa, 193 Mo. 527; Railroad v. Brick Co., 198 Mo. 710. (5) The course of the trial made the instruction proper. Neff v. Cameron, 213 Mo. 363. (6) It is not error to refuse instructions covered by those given. State v. Gow, 235 Mo. 328; Ellis v. Railroad, 234 Mo. 681; Cossitt v. Railroad, 224 Mo. 113; Richardson v. Railroad, 223 Mo. 342. (7) Evidence as to the price paid by plaintiff for other property in the block was admissible. Railroad v. Heinderceich, 234 Ill. 241; Pres-

bey v. Railroad, 103 Mass. 9; O'Malley v. Commonwealth, 182 Mass. 198; Railroad v. Chamblin, 108 Va. 42; Water Works v. San Francisco, 192 Fed. 164. (8) Plaintiff cannot shift positions as to the reason for offering evidence.   Edmonston v. Jones, 96 Mo. App. 92; Meddis v. Kenney, 176 Mo. 210. (9) The alleged contract was not the contract of the defendants.   R. S. 1909, sec. 2783; Johnson v. Fecht, 185 Mo. 343.

GRAVES, J.—Barring a few sentences of argumentative matter counsel for the defendants have made a very concise statement of the case, and we adopt it, with these sentences cut out.   In fact we could take the statement of counsel upon either side of the controversy and have a fair general outline of the case, but that made for the defendants is a little more compact and concise and we take that.   It reads:

"This is a proceeding, instituted December 1, 1910, by the plaintiff in the circuit court of the city of St. Louis, to condemn, for the use of the plaintiff for depot purposes, certain property situated in City Block 841 of the city of St. Louis.

"The petition was in the usual form and need not be particularly noticed at this point.   The defendants are husband and wife, and the title to the premises is in the wife.   The city block in which the premises are situated lies just a block north and east of Twelfth and Washington avenue, in the City of St. Louis, and is bounded on the east by Twelfth street, on the west by High street (which is really Twelfth street at that point), on the north by Linden street, and on the south by Lucas avenue, which is the next street north of Washington avenue.   The three pieces of property sought to be condemned comprise a lot at the northeast corner of the block, fronting seventy-one feet and some inches on Twelfth street, by a depth westwardly on Linden street of one hundred and seven feet and some inches; another lot at the southwest corner of the

block fronting seventy-one feet and some inches on High street, by a depth on Lucas avenue to the east of sixty feet and some inches; and a third lying in the eastern center of the block, fronting eighteen feet on Twelfth street, by a depth of seventy-eight feet toward the west.

"The defendants answered, setting up two affirmative defenses. First, that the railroad, for the use of which the plaintiff sought to condemn the property, was an interurban electric railroad within the meaning of section 3228, Revised Statutes 1909, and that therefore the plaintiff was without authority of law to condemn said property to the uses mentioned in the petition; and, second, that the plaintiff had abandoned a material portion of the route of its railroad, as described in its charter, and was therefore without authority of law to condemn any property to its use for any purpose.

"The affirmative averments of this answer were put in issue by a reply filed by the plaintiff.

"Upon the issues thus made a trial was had to the court March 27, 1911, resulting in a judgment finding the issues submitted by the answer in favor of the plaintiff, awarding the plaintiff the right to condemn the property and appointing commissioners to assess the damages.

"Within four days after that judgment was entered the defendants filed their motion for a new trial and in arrest of judgment. These motions the court overruled and the defendants excepted, and, having obtained time within which to file a bill of exceptions, filed the same within the time allowed, with all formalities duly complied with.

"In due time, and under date of June 6, 1911, the commissioners appointed by the court reported that they valued the property sought to be condemned at $164,300. Thereupon both parties excepted to this report, the exceptions of the defendants being filed June

10, 1911. In these exceptions the defendants renewed their objections to the proceeding and to the right to condemn the property, on the same grounds as were set forth in their answer, supra; and also complained that the damages allowed by the commissioners were inadequate. The plaintiff likewise filed exceptions to this report, complaining of the manner in which the commissioners had arrived at their conclusion as to the value of the property, and of the valuation placed thereon. Each side asked a jury trial as to the value of the property; and, in response to that request, such was had, beginning December 11, 1911.

"At the opening of this trial the defendants objected to the introduction of any testimony, and to the trial of the exceptions with respect to the value of the property, on the ground that the plaintiff was shown to have no right to condemn the property for the reasons set forth in the answer above referred to; the court overruled the objection, and defendants excepted, and, at the conclusion of the trial, filed a motion for a new trial and in arrest of judgment assigning the same reasons as those set forth in the answer above referred to; and, on the overruling of these motions, duly excepted and took another bill of exceptions embodying the rulings on that subject.

"At the trial to the jury on the question of value, each of the parties called numerous expert witnesses, and their testimony with respect to the proper value of the premises on the 8th day of June, 1911, when the commissioners filed their report, took a wide range. The minimum valuation assigned by any witness was $96,000; the maximum nearly $300,000. The jury, by their verdict, assessed the value of the premises at an aggregate of $175,850, and the court entered judgment accordingly. After all due formalities, both parties appealed. The defendants here contend that under the evidence in the record the affirmative defenses in the answer ought to have prevailed, to-wit,

that the railroad which the plaintiff owned and oper-
ated, and to the use of which it sought to condemn this
property, was, and is, an interurban electric railroad
within the meaning of section 3228, Revised Statutes
1909, and hence the plaintiff was without authority of
law to condemn property to its use for depot purposes,
as it sought to do in this proceeding; and,
secondly, that the plaintiff had abandoned a material
portion of the route for its road designated in its char-
ter, and was therefore without authority to exercise
the power of eminent domain for any purpose. The
plaintiff, appealing, complains of rulings of the trial
judge on the admission and exclusion of testimony,
and on instructions, during the progress of the hearing
before the jury on the question of value.

"The parties have left the field of their contro-
versy long enough to unite in printing the entire record
applicable to both appeals, and have brought it here
in that form, certified by the clerk, with a separate
publication comprising copies of the blue prints, maps,
etc., which were introduced in evidence and are called
for by the various bills of exceptions contained in the
record." To this it is added by counsel for the plaintiff
that, upon the return of the award, the money was
promptly paid into court for the defendants, and again
upon the return of the verdict by the jury, the addition-
al sum awarded by the jury was likewise paid into
court, and thereupon the plaintiff took possession of
the property for the uses stated in the petition. Mat-
ters of detail will be left to the opinion.

I. As said in the case of Chicago Great Western
Railroad Company v. Kemper, 256 Mo. 279, condem-
nation proceedings have two stages or
hearings, i. e., one upon the sufficiency
of the petition and the right to condemn,
and one upon the compensation to be
paid for the property taken or damaged.

Condemnation:
Interurban
Electric
Line.

Defendants in this case direct their attack here more particularly to the result of the first judgment in the case, i. e., the judgment by which it was determined that the plaintiff had the right to condemn defendant's property. Plaintiff by its appeal attacks the latter judgment as to the compensation allowed by the jury. The contention of the defendants is one of easy solution. The right of this plaintiff to condemn property for right of way and other railroad purposes has been before us twice. Julius E. Greffet and Rosalie Greffet, property-owners in the city of St. Louis, along the identical line here involved, sought to prohibit Judge Williams, and the three commissioners which he had appointed, from further proceeding in the condemnation proceeding brought by this same plaintiff. This plaintiff was made a party respondent in that suit. In that case we held that the plaintiff had the right to condemn property for railroad purposes, and with the reasoning of that case, we are satisfied. [State ex rel. v. Williams, 227 Mo. l. c. 47.]

Not only so, but in this identical proceeding the two MasAdarases, the defendants here, likewise filed their application in this court for a writ of prohibition against Judge Shields who tried the instant proceeding. In that petition they urged the same matter that they urge now. Therein they said:

"And the petitioners say that said railway company is not entitled to condemn their said property to its such use because (1) the said railway company has abandoned the route for its road designated in its articles of incorporation, and is therefore without the power of eminent domain; and (2) the said railroad, to the use of which said property is sought to be condemned, is an interurban electric railroad within the meaning of section 3228, Revised Statutes 1909, and lands may not be condemned to its use for depot purposes; and that the said respondent, Honorable George H. Shields, as judge of the circuit court for the eighth

judicial circuit, presiding in Division No. 4 of the circuit court of the city of St. Louis, is, for the same reasons, without jurisdiction or authority of law to condemn said lands of the said petitioners to such use of said railway company.''

*Vide* files of record in the office of the clerk of this court. This application we denied on April 11, 1911, and thereafter Judge SHIELDS proceeded with the case to the judgment now attacked on this appeal. If the plaintiff is a railroad company under the steam railroad act there can be no question of its right to condemn property for its right of way and depot purposes. If it is an interurban railway company, as defendants contend, then by the Act of 1907 (Laws 1907, p. 174) it was given the same rights and power as steam railroads in the matter of condemning property for railroad purposes. [State ex rel. v. Williams, supra.]

So that the right of this plaintiff to condemn property for the purposes stated in its petition in this case has been practically twice passed upon by this court—and we shall not open up the question now. The refusing of the writ of prohibition in the matter mentioned, supra, however, did not preclude the defendants from urging the question of abandonment pleaded in their answer. That was a matter of fact to be thrashed out by the trial judge. Under the evidence, Judge SHIELDS, in an exhaustive and elaborate opinion (found in the files of the case of State ex rel. MacAdaras et al. v. Shields, No. 11947) held that the evidence totally failed to show abandonment. We have examined this evidence and are satisfied with the ruling *nisi* thereon.

Under the evidence and the law that judgment finding that the plaintiff was entitled to condemn and take the property in dispute should be affirmed.

II. Plaintiff's appeal is directed to the trial of the issue as to damages. In this relation it complains

of instructions given and refused, as well as the admission and rejection of evidence. It first challenges instruction numbered 11, given by the court, which instruction thus reads:

Condemnation: Enhancement Caused by Plaintiff's Near-by Improvement.

"If the jury find and believe from the evidence that the plaintiff had located its road in St. Louis and constructed a freight depot or station in proximity to the property of the defendants before it sought to condemn the property in controversy, and that this location and construction had enhanced the value of the defendants' property, you should take that enhancement into consideration in fixing the fair market value of the defendants' property at the time the same was taken, to-wit, June 8, 1911."

To gather the force of plaintiff's objection to this instruction a few pertinent facts should be stated. Plaintiff was building its line from a bridge across the Mississippi river out into the city. It was a single contemplated scheme and plan for a railroad and necessary freight and passenger depots. The land in dispute was sought for its tracks and passenger depot. Prior to the date plaintiff paid the commissioners' award of damages into court, the plaintiff had located and built its feight depot in the vicinity of the property in dispute upon property it had acquired for that purpose. Plaintiff contends that as the building of the railroad and necessary freight and passenger depot for use thereon, was all one plan and one work, the defendants were not entitled to have the jury consider the enhanced value, if any, which was given to the property, by reason of the doing of a part of the work contemplated by the plan, i. e. the building of the freight depot, but that the value should be ascertained without the consideration of that matter. The plaintiff took all of the three lots, so that the question of damages is somewhat simplified. Counsel for defendants thus state the situation:

"But in this case the question of the amount to be recovered was entirely uncomplicated by any consideration of consequential damages, or special benefits to property not taken, such as is usually met with in cases of this character; because, forsooth, the whole of each property was sought to be appropriated."

It being true, as this record shows, that the building of the railroad and the building of a freight depot and a passenger depot were parts and parcels of one single continuous and simultaneous public improvement, we are impressed with the view that this instruction is not supported by the weight of authority, and certainly not by the reason of the thing. If, when property is taken *in toto,* as here, it be the rule that the owner can have considered as an element of his damages the enhanced value of the property occasioned by a partial construction of the railroad, and its incidents (such as depots, switches, etc.) then the converse of the proposition should likewise be true, i. e., that if a partial construction of the contemplated road and its incidents, above named, had depreciated the property sought to be taken, then the railroad should have the benefit of such depreciation, when it actually came to the taking of the property. No court would stand for this latter rule, and yet it is the very converse of the one sought to be enforced here. The proper rule, when the whole property is being taken, is not to allow the jury to consider either enhancements or depreciation brought about by the construction of the improvement for which the property is being taken. In other words, the value should be determined independent of the proposed improvement. If the anticipated and proposed improvement had been completed, and the value of the property had been enhanced thereby, and afterward it was sought to condemn the property for additional improvements, as the building of passenger depot, not a part of the original improvement, then we would have

a very different question. But in this case, we have the building of railroad tracks, switches, depots (freight and passenger) as part and parcel of one continuous and simultaneous improvement, and to say that when (under the one general plan and scope of the improvement) the builder got the road built to a block where it had located a freight depot, and then built that depot, the owner in the next block is to be allowed to enhance the value of his property (by this partial construction of the proposed work) before the condemner had had time to get his block (although on and along the profile map of the road), would be to allow enhanced values upon a very shadowy ground. And as suggested above, if such partial construction of the contemplated whole did in fact enhance the value, and the landowner at the time of the actual taking is entitled to such enhancement, then the other and opposite rule must be true, i. e., that if such partial construction of the whole contemplated improvement decreased the value of the land before the company actually took it, then the decrease should be considered in assessing the damages. I do not agree to either of these two doctrines, and hence say there was error in giving instruction number 11, supra. There are cases which squint at the rule announced in the instruction, but reason is not with them. These cases will be found collated in a note to the text of 2 Lewis's Eminent Domain (3 Ed.), sec. 745. That section reads:

"Whatever the time fixed upon with reference to which the compensation shall be estimated, the owner is entitled to the actual value of the land at that time, even though it may have been enhanced by reason of the projected improvement for which it is taken. It is said this is not really making the condemning party pay for an enhancement caused by its own work, as such enhancement does not come from the mere projection of the work, but from the existence of circumstances which create a demand for the work, and ren-

der it probable that such a work will sooner or later be built. In so far as the enhancement is due to such circumstances no doubt it is properly considered and allowed. But it may be doubted whether the rule should go any further. If the proposed improvement had depreciated the value of the property, it would be very unjust that the condemning party should get it at its depreciated value, and the correct rule would seem to be that the value should be estimated irrespective of any effect produced by the proposed work. It has been held improper to consider what the property would have been worth if it could have had the benefit of the proposed improvement without being taken.''

The views of the author as to what should be the rule accords with my views, and for such there is ample authority. Thus in May v. Boston, 158 Mass l. c. 29, it is said:

''If the expected improvement involves the taking of land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the possibility of ever using it under improved conditions. In that respect it stands differently from other lands in the vicinity which is not taken. Whenever there is a project for laying out or widening a way, or taking land for any other public use which is expected to increase the value of real estate in the neighborhood, if the market price of land in the vicinity rises in anticipation of the change, the statute very justly says that the land taken shall not be paid for at the increased price. If it is known from the beginning exactly what land will be taken, it must also be known that that particular land can never be made more valuable by the improvements, since it can never be used by its owner under the improved conditions. If the plan is general, and it is not known exactly what land will be needed by the public, but that only that

some land will, whenever the plan takes definite form, and the location is fixed, it is known that the land to be taken has not received, and never can receive, any benefit from the improvements. There is no injustice in saying that such land shall not entitle its owner to be paid out of the public treasury at a rate determined, not by its value for use, but by a prospective and speculative value of land in the vicinity, derived from an expectation of the benefit to come from the public use for which this is to be taken.''

In an earlier Massachusetts case, Dorgan v. City of Boston, 12 Allen, l. c. 231, BIGELOW, C. J., said:

''We are unable to perceive that this rule of damages will work any injustice to the landowner. It provides for compensation to him for the value of the property as possessed and enjoyed by him at the time when the statute was enacted which appropriated it to the public use. Nor can we see any good reasons for including in the valuation an element not incident or appertaining to the property itself in the hands of the owner, but which it acquires only by the act which takes it from him and appropriates it to the public. Strictly speaking, the land taken is intrinsically worth to the owner only so much as its valuation would be as part of the entire tract or lot, irrespective of its proposed severance for the public use. It is difficult to understand how land is increased in value to the owner by a public improvement, which can be effected only by depriving him of its use. Certainly there is no principle of equity on which a party can rest a claim for damages for the loss of a benefit or profit which, from the very nature of the case, he never could have received or enjoyed.''

These cases it is true are discussing a statute which fixed the rule of damages, but the validity of the statute was challenged on the ground that it was a wrongful taking of the landowner's property, and therefore the very reason of the rule had to be dis-

cussed.   And further in Benton v. Brookline, 151 Mass.
l. c. 258, the court says:

"The benefit and the increased value arise from
the expected construction of the way.   The location
does not construct it, but only renders its contemplated
construction more probable.   Its location and construc-
tion may be so assured before the location that the
formal location may make no appreciable difference in
the market value of land affected.   It would be as reas-
onable to hold that there could be no assessment for
betterments because the increase in market value from
the expected construction of the way accrued in antici-
pation of the record location, as it would be to hold that
such increase could be allowed  in damages  for land
taken.   [Cobb v. Boston, 112 Mass. 181.] "  In Louisi-
ana Ry. & Nav. Co. v. Xavier Realty, 115 La. l. c. 341,
it is said:

"We think the district court was right in taking as
the date for estimating the value of property expro-
priated for railroad purposes that of the institution of
the expropriation suit, *withdrawing, however, from the
value so ascertained so much of the same as was the
result of the construction.*   Many elements enter in
enhancing the value of the property in the interval be-
tween the date of the determination of the railroad
company to build its road and the date of the expropria-
tion proceedings which may be taken for that purpose,
which are entirely independent of the building of the
road. The property owners, not the railroad company,
are entitled to the benefit of such factors in increasing
values."   (The italics are ours.)

In Shoemaker v. United States, 147 U. S. l. c. 305,
that court said:

"While the board should be allowed a wide field in
which to extend their investigation, yet it has never
been held that they can go outside of the immediate
duty before them, viz., to appraise the tracts of land
proposed to be taken, *by receiving evidence of con-*

*jectural or speculative values, based upon the antici-
pated effect of the proceedings under which the con-
demnation is had.* [Kerr v. South Park Commission-
ers, 117 U. S. 379, 380.]" Again the italics are ours.

So, too, in City of El Paso v. Coffin, 40 Tex. Civ.
App. l. c. 60, the Texas court thus states the rule:

"It is held generally, in cases presenting the ap-
propriate facts, that, where a person's entire property
is included in one general proceeding of condemnation
for a particular purpose, it is not permissible to con-
sider that purpose, or the results thereof, in estimating
the owner's compensation. The reasons for this rule
are apparent. To permit it would be to take into con-
sideration the condemnation proceeding itself as a fac-
tor, which is not allowed. Further, it is evident, in such
a case, that the taking, and the effect on the value from
such taking, would be concurrent, and such increase
would not exist when the taking occurs. The person's
property is taken, and is absorbed in the purpose for
which it is taken, and, to allow him a compensation
based on the value which the property would have had
if not taken would be giving it a status it could not pos-
sibly have had in the very nature of the act. The reas-
oning of the Supreme Judicial Court of Massachusetts
is appropriate here, though not its decision, as that was
controlled by a statute: 'Its real value for use is not
increased until the change in its surroundings comes.
If the expected improvement involves the taking of the
land by the right of eminent domain, the value of the
land taken will never be enhanced by the improvement,
for the taking precludes the probability of ever using it
under improved conditions.' [May v. City of Boston,
158 Mass. 21.]"

Other cases will be found cited in the briefs, and by
the author under section 745 of Lewis's Eminent Do-
main, supra. These, however, suffice to illustrate the
correct rule. In the case at bar the condemnation pro-
ceedings were begun December 1, 1910. February 24,

1910, plaintiff tried to buy these very lots from defendant for depot purposes. It thought it had bought them. It had a contract signed by the purported agent of defendants for them. The plaintiff even acquired the very property upon which the freight depot was located after it thought it had acquired this property from the defendants. The freight depot was begun in November, 1910, and first used in February, 1911. These facts are outlined as showing that the entire proceeding was one continuous and simultaneous act of public improvement, with the taking of defendants' property as a part of the improvement scheme. Under the facts of the case, this instruction was error, for which the judgment must be reversed.

III. From the foregoing it follows that the refusal of plaintiff's instructions covering the contrary view of defendants' instruction number 11 should have been given, and their refusal constitutes error. It is urged that the court erred in excluding from the case a certain written contract of date February 24, 1910. By this contract the defendants through their purported agent, John S. Leahy, sold this property to plaintiffs for the sum of $150,000. The defendants later disavowed Leahy's authority, and declined to make the conveyance. This contract was not competent upon the question of the value (because Leahy's authority to make it is not conclusively shown), but it was competent as tending to show that the whole improvement was one simultaneous act, and that it included the taking of this property, as might have been gathered from the profile of the road. It only becomes material by reason of the defendants claiming that the act of building the road and constructing the freight depot were independent acts, and the taking of defendants' property for a passenger depot was an afterthought. This attempted

*Condemnation:*
*Evidence:*
*Disavowed*
*Contract of*
*Purchase.*

purchase of the property, evidenced by that contract, rebuts this theory of the defendants, and whilst there is other evidence rebutting such theory, yet if defendants persist in their theory, this contract fully explodes it, because it was made and executed and $2500 paid thereon long before the freight depot, which causes the trouble in this case, was even located. For this purpose the contract was competent.

IV. There are other matters suggested in the briefs, but only one other need be noted. The court admitted some evidence of the value of property on Washington avenue as a standard by which to fix the value of this property. The two classes of property are entirely too dissimilar under the record to make this evidence of value, and it would therefore likely prove confusing and injurious. Upon retrial this should be excluded.

Condemnation: Evidence: Value of Other Property as Standard.

From what has been said the judgment as to damages should be reversed and the cause remanded, with directions to the trial court to retry the question of damages alone in the light of this opinion. It is so ordered. All concur.