**QUALITY HEIGHTS REDEVELOPMENT CORPORATION, Appellant,**

v.

**URBAN PIONEERS, Respondent.**

No. WD 42383.

Missouri Court of Appeals, Western District.

Oct. 16, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

Application to Transfer Denied Jan. 9, 1991.

William H. Sanders, Sr., Michael Thompson, Peter T. Niosi, Kansas City, for appellant.

Sherwin L. Epstein, John W. Roe, Kansas City, for respondent.

Before TURNAGE, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Quality Heights Redevelopment Corporation appeals from a judgment of the circuit court entered on a condemnation jury verdict assessing the value of nine vacant inner-city lots in Kansas City condemned for the construction of a subsidized housing development. Quality Heights presents two points on appeal: (1) trial court error in overruling condemnor's motion to strike testimony and exhibits concerning three comparable sales because evidence of such sales were inadmissible under the project influence doctrine; and (2) trial court error in allowing a Kansas City Neighborhood Alliance Annual Report into evidence as such report permitted the jury to consider appellant's financial status and the subsequent use of the condemned property.

Quality Heights is an urban redevelopment corporation organized pursuant to Chapter 353 of the Missouri Revised Statutes. As such, it was organized, "for the purpose of the clearance, replanning, reconstruction or rehabilitation of blighted areas...." § 353.030(12), RSMo 1986. Two urban development plans for two areas of blighted land were prepared by Quality Heights, "Quality Heights North Redevelopment Plan" and "Quality Heights South Redevelopment Plan." The Kansas City, Missouri City Plan Commission held a public hearing on both plans May 5, 1987, and recommended approval of the plans. The city passed ordinances approving the redevelopment plans, declaring the redevelopment areas blighted and authorizing the Mayor to issue certificates of public convenience and necessity authorizing Quality Heights to exercise eminent domain of these areas.

Quality Heights filed its petition for eminent domain naming, among others, respondent Urban Pioneers, a limited partnership engaged in the real estate business. Urban Pioneers owned the nine lots which were the subject of the condemnation case. These lots were located in the Washington Wheatley neighborhood which is bounded by 18th street on the north, Paseo on the east, Brooklyn on the west and 27th street on the south.

After an initial hearing, Judge Lee Wells ordered that the land be condemned and appointed three commissioners to value the property. The commissioners valued the

vacant lots owned by Urban Pioneers at $4,995.75 as follows:

| Site # 5.0 | $ 360.00 |
| Site # 9.0 | $ 288.00 |
| Site # 12.0 | $ 468.75 |
| Site # 31.2 | $ 495.00 |
| Site # 31.3 | $ 495.00 |
| Site # 31.4 | $ 495.00 |
| Site # 31.5 | $ 495.00 |
| Site # 31.6 | $ 495.00 |
| Site # 33.0 | $1,404.00 |

Urban Pioneers filed timely exceptions to the commissioners' report and a jury trial began on the matter on May 22, 1989.

Henry Lyons, the managing partner of Urban Pioneers, testified that Urban Pioneers had purchased twenty-four vacant lots within the redevelopment area from the Jackson County Land Trust. Urban Pioneers had paid a total of $1,360 for the nine vacant lots that are the subject of this action. Lyons testified that Urban Pioneers had sold fifteen of its lots to the Kansas City Neighborhood Alliance, the developer of the project, on December 31, 1986, for $1,060 each in order to help finance this lawsuit.

Three other vacant lots were sold in April 1987 for $5,000 each, again to help finance the lawsuit. These lots were sold to James and Joan Benimon, Edward Clark and Russell Anderson. Edward Clark was the accountant for Urban Pioneers and both the tax bills for the Clark and Benimon properties were being sent to Henry Lyons. A week after the sale to the Benimons, Urban Pioneers bought one of the condemned lots from the Land Trust for a purchase price of $300. Lyons testified that the nine condemned lots were worth $9,000 to $10,000 each as of September 9, 1987, the date of the taking.

Albert Margolin, a real estate appraiser testifying on behalf of Urban Pioneers, also valued the lots at $9,000 each. Margolin used a comparable sales appraisal which he finished the weekend before the trial, switching from an earlier appraisal method. Margolin used the three $5,000 sales for his comparison, adjusting upwards. These were the only sales in the area other than those made by the Land Trust. Margolin opined that there were no other sales because the "area is getting hot" and the land was valuable. He did testify, however, that he didn't think people were moving into the area at the time of the condemnation and that there were probably some lots in the same area available for purchase from the Land Trust.

Appellant also presented expert testimony on the subject of valuation. Robert Newsome, appellant's appraiser, testified that save for one site valued at $1,000, each of the condemned lots had a value of $500 at the time of the condemnation. Ken Bacchus, an urban planner, testified that there was no market for new housing in the area based upon a marketing study he had performed in the neighborhood in 1987–88.

Quality Heights moved to strike the evidence presented by Henry Lyons of the three $5,000 sales when Lyons testified that the Quality Heights project was a major factor in those sales. The motion was based upon use of promotional literature by Lyons in making the sale, promotional literature prominently featuring reference to the purposed project. The motion was overruled. A renewal of the motion during Margolin's testimony was also overruled.

The jury awarded Urban Pioneers a total of $47,500 in damages.[1] This appeal followed.

■ As it is dispositive, we need only address the first point presented by the

---

**1.** The chart below contains comparisons of what Urban Pioneers paid for the lots, what the commissioners awarded and what the jury awarded:

| | $ Paid by Urban Pioneers for Purchase | $ Awarded by Commissioners | $ Given by Jury |
|---|---|---|---|
| Site # 5.0 | $140 | $ 360 | $ 5,000 |
| Site # 9.0 | $100 | $ 288 | $ 3,500 |
| Site # 12.0 | $135 | $ 468.75 | $ 4,000 |
| Site # 31.2 | $135 | $ 495 | $ 5,000 |
| Site # 31.3 | $135 | $ 495 | $ 5,000 |
| Site # 31.4 | $135 | $ 495 | $ 5,000 |
| Site # 31.5 | $135 | $ 495 | $ 5,000 |
| Site # 31.6 | $135 | $ 495 | $ 5,000 |
| Site # 33.0 | $300 | $1,404 | $10,000 |

appellant, that the trial court prejudicially erred in overruling the appellant's motion to strike testimony and exhibits concerning the three allegedly comparable sales because such were inadmissible under the project influence doctrine. At the outset we note that the admission of evidence lies within the discretion of the trial judge and errors in the admission or exclusion of evidence will not result in a reversal unless there is substantial and glaring injustice. *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.*, 726 S.W.2d 866, 869 (Mo.App.1987). Such a substantial and glaring injustice is present in the instant case.

As a rule, the accepted way of determining the market value of real estate is done by using a "comparable sales" method. *Id.* This method establishes market value "by voluntary sales of other similar property made in the same general vicinity and not too remote in time to the date of the taking." *State ex rel. State Highway Comm'n v. Berkeley School Dist.*, 618 S.W.2d 195, 197 (Mo.App.1981).

There is a limitation to using this method, however. A proposed project cannot entitle the landowner to any appreciation value or enhancement that the project would bring to the landowners' property, a principle enunciated by the Missouri courts in *St. Louis Elec. Terminal Ry. Co. v. MacAdaras*, 257 Mo. 448, 166 S.W. 307 (1914), where the project influence doctrine was first adapted. The court stated:

> The proper rule, when the whole property is being taken, is not to allow the jury to consider either enhancements or depreciation brought about by the construction of the improvement for which the property is being taken. In other words, the value should be determined independent of the proposed improvement.

*Id.* 166 S.W. at 310.

The project influence doctrine is still good law and has been used by our courts at various times in various cases. *See Kansas City Power & Light v. Jenkins*, 648 S.W.2d 555 (Mo.App.1983); *Greystone Heights Redevelopment Corp. v. Nicholas Inv. Co.*, 500 S.W.2d 292 (Mo.App.1973); *Missouri State Park Bd. v. McDaniel*, 473 S.W.2d 774 (Mo.App.1971).

In the instant case, the three comparable sales of $5,000 relied upon by Urban Pioneers were clearly inadmissible under the project influence doctrine. Henry Lyons testified that he had a brochure that he gave to prospective buyers; he discussed the properties as a "good investment" in relation to this brochure. Examination of the brochure in question shows that its primary focus is on the proposed project. Newspaper articles about and site plans from Quality Heights are included in the brochure. Lyons himself admitted that the Quality Heights project was one of the reasons that the area would be a "good buy." He admitted that the Quality Heights project was the closest project, foremost in the buyers minds. Under the project influence doctrine this evidence was clearly inadmissible and the trial court erred in allowing the evidence to remain in over appellant's motion to strike.

It is also obvious that the evidence here does not present itself under the sole exception to the project influence doctrine. The exception states that, "if the project as originally contemplated did not include the property subsequently condemned, then the landowner is entitled to the enhancement in the value of the land due to the improvement." *Missouri State Park Board v. McDaniel, supra,* 473 S.W.2d at 779; *see also Greystone Heights Redevelopment Corp. v. Nicholas Inv. Co., supra,* 500 S.W.2d at 296. Nothing in the record suggests that this exception should apply.

The judgment of the trial court is reversed and the cause remanded for a new trial.

All concur.