**Ruby LAWS, Plaintiff-Appellant,**

v.

**CITY OF WELLSTON, a Municipal Corporation, Defendant-Respondent.**

**No. 53519.**

Supreme Court of Missouri, Division No. 2.

Dec. 9, 1968.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 31, 1968.

James F. Koester, St. Louis, and Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for plaintiff-appellant.

John J. Horgan, Robert E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendant-respondent.

FINCH, Presiding Judge.

Plaintiff brought suit for $20,000 for personal injuries received in a fall allegedly caused by a hole in a public sidewalk in Wellston. The jury returned a nine-man verdict for defendant and plaintiff appeals from the judgment entered thereon. We reverse and remand.

The single question presented on appeal involves the use by defendant of an eyewitness whose name had not been disclosed by answer to an interrogatory asking the name and address of any person known to defendant or its representatives who witnessed plaintiff's fall. We limit our recitation of facts to those relating to this issue.

Suit was filed on May 3, 1966. An answer was filed on June 8, and on June 14 plaintiff submitted written interrogatories to defendant pursuant to Supreme Court Rule 56.01, V.A.M.R. Interrogatory No. 10 was as follows: "State whether you or your representatives know of any witnesses to plaintiff's fall and, if so, please give names and addresses of such witnesses." On July 5 defendant filed answers to plaintiff's interrogatories, the answer to Interrogatory No. 10 being "No". Plaintiff did not submit subsequent interrogatories to defendant and defendant's answer to Interrogatory No. 10 was never amended.

The trial of this case commenced on October 3, 1967. Immediately after the conclusion of plaintiff's evidence, counsel for defendant advised plaintiff's attorney that he expected to call as a witness one Betty Abbott, who would testify as an eyewitness. Mrs. Abbott had lived at 6304 Audrey Avenue, in Wellston, at the time of plaintiff's fall. At that time, her name was Betty Warren, but subsequently she married and moved from Wellston.

Out of the presence of the jury, plaintiff claimed surprise and objected to the use of this witness because of defendant's failure to divulge knowledge thereof in response to plaintiff's interrogatory. Counsel for defendant explained to the court that the witness was first located in October 1966, approximately three months after the interrogatories were answered, and claimed that defendant had no duty to disclose such discovery.

The trial court first suggested that defendant bring in the adjuster who had located the witness and have him testify as to when the witness was located. Defendant explained this could not be done at that time because the adjuster had been transferred to Cleveland, Ohio. Defendant

then put Mrs. Abbott, the witness, on the stand and she testified that she first was contacted by an adjuster regarding the occurrence sometime in October 1966, at which time she gave a statement. Mr. Horgan, counsel for defendant, testified that his first knowledge of this witness came in November 1966, when an insurance investigator for Fireman's Fund Mutual Insurance Company advised "that he had found an eyewitness who was favorable to the defendant". This information was contained in a letter from the insurance company to Mr. Horgan, dated November 8, 1966. Defendant was permitted, over objection, to read into the record a portion of that letter which said: "Enclosed you will also find a recorded statement from a Miss Betty Warren. Miss Warren's name has never been mentioned to date and we find that she is one of the other eyewitnesses to the accident." The trial court denied plaintiff's motion to exclude the testimony of Mrs. Abbott. Plaintiff then requested that the case be put over to the next day so as to permit plaintiff immediately to take the deposition of Mrs. Abbott, but this request was denied. Counsel next asked for "five minutes to talk to her and find out what she is going to say", but this request also was denied. The court stated:

"Well, of course, this goes back to the very basic point that we discussed in chambers, as to how much of a duty defendant has of advising you of subsequently found witnesses. And if this were a situation where I felt that you were entitled to all this time, I would not let this woman testify, to be frank with you. But I don't think you are. You can get your investigators and go out and find witnesses just like anybody else does. And if the Supreme Court holds that they have to give these witnesses subsequently, that will certainly take away any element of surprise in a damage suit.

"It is still an adversary system and I don't think one side shoud be penalized because of the other side's inability to discover what they have. So I will deny that motion.

"All right. Bring down the jury."

■ It is well established that one party is entitled to obtain from the other party the names and addresses of persons who were witnesses to the occurrence out of which the action arose. State ex rel. Pete Rhodes Supply Co. v. Crain, Mo., 373 S.W. 2d 38. Defendant recognizes this rule but says that its only obligation thereunder was to answer truthfully at the time the answers were made. If plaintiff wanted subsequent information as to whether defendant had learned of any eyewitnesses, she could and should have submitted subsequent interrogatories requesting this information, according to defendant's view. On the other hand, *plaintiff asserts that the answering party has a continuing obligation to see that its verified answers to interrogatories are truthful and accurate, and this includes the duty to amend answers if necessary so as to make them accurate as of the time of trial.*

This is a case of first impression in this court. We are cited to two decisions of the Kansas City Court of Appeals which relate to this question.

In Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc., Mo.App., 317 S.W.2d 841, plaintiff submitted an interrogatory asking for names of employees of defendant who had worked on the tractor which defendant was charged with negligently repairing. Defendant answered by listing five employees. Depositions of all these persons were taken by plaintiff. The case then was given a special setting on Monday, October 14. On Friday, October 11, defendant learned that two additional employees had worked on the tractor and a third had inspected it. On Saturday, October 12, defendant called plaintiff's attorney and gave this information to him. On Monday morning, when the case was called, defendant sought leave to amend its answer to the interrogatories and list the three additional employees. Plaintiff ob-

jected, saying he had taken depositions of the other five persons, all of whom denied knowledge, and that it would be prejudicial at this late date, when plaintiff was ready and witnesses were all there, to inject the names of other people. The trial court sustained plaintiff's objection, refusing permission to defendant to amend its answers and would not permit these three persons to testify. The trial judge found that defendant had produced no evidence to explain or justify the long delay and that plaintiff had witnesses from some distance present for the special setting and would be prejudiced by a continuance. No relief was given by the trial court on defendant's motion for new trial. On appeal, the Court of Appeals affirmed, refusing to say that the trial court had abused its discretion. Obviously, the case did not decide the question here presented. However, the action taken by the trial court and affirmed on appeal at least implies some obligation by the party interrogated with reference to furnishing the requested data regarding persons with knowledge.

In the subsequent case of Aulgur v. Zylich, Mo.App., 390 S.W.2d 553, defendant propounded an interrogatory to plaintiff asking for names and addresses of persons having knowledge of the incident in which plaintiff received personal injuries. Plaintiff answered that he understood there were two or three witnesses but their names were unknown to him at that time. This answer was never amended and plaintiff did not supply the names of such witnesses to the defendant at any time. At the trial, plaintiff produced two persons and undertook to use them as witnesses concerning the accident. Defendant objected on the basis that their names had not been disclosed by the answers to the interrogatories and they should not be permitted to testify. The trial court sustained this objection. The trial resulted in a verdict for defendant and plaintiff sought a new trial on the sole ground that the trial court committed prejudicial error in excluding the testimony of these two eyewitnesses. The trial court sustained this motion and

granted a new trial and the defendant appealed. On appeal, defendant contended that plaintiff had a continuing duty to amend his answers when he knew they became incorrect. Plaintiff's basic and primary contention on appeal was that the matter was discretionary with the trial court and it had the right to give relief on motion for new trial by sustaining the motion and granting a new trial, but plaintiff also asserted his duty in answering interrogatories was limited to giving answers that were correct when made.

The Kansas City Court of Appeals, while indicating the view that Rules 56.01 and 57.01 do not provide for supplemental answers after the interrogatory originally is answered truthfully, did not actually decide that question. Instead, it stated, 390 S.W.2d 1. c. 555, as follows: "For the purpose of this appeal it is not necessary for this court to decide whether plaintiff was required by Missouri discovery rules to amend his original answers and advise defendant of information learned since filing them. The essential question for our decision is not whether plaintiff technically conformed to the prescribed procedures of civil practice. Our concern is whether *the trial court* acted within the bounds of its own authority." The Court of Appeals then held that the trial court did not abuse its discretion in granting a new trial.

Our Rule 56.01 was taken from Rule 33 of the Federal Rules of Civil Procedure and, except for minor changes, is identical with that rule. We find that Rule 33 has been construed on numerous occasions by the federal courts. Particularly in the more recent cases, it usually has been held that there is a continuing obligation to convey the correct answer to the opposing side, and that even though his answer was correct when made, the party has an obligation subsequently to amend it and to convey correct information to the opposing party if he obtains later knowledge making the earlier answer incorrect. In discussing this question of a continuing obligation and the decisions with reference thereto in the fed-

eral courts, Barron & Holtzoff, Federal Practice and Procedure, Vol. 2A, § 771.1, p. 388, has this to say:

"Not infrequently it will happen that an answer to an interrogatory, though full and truthful to the best of the party's knowledge at the time it is made, will become incomplete or misleading in the light of information he later discovers. Is he under any duty to amend his answer and advise the party who submitted the interrogatory of his new information?

"The earliest cases seemed to recognize a moral duty, but this does not fully meet the necessities of the situation. \* \* \*

"Finally some courts took the ultimate step and held that even where the interrogatories are not expressly made continuing, either by a provision added to them by the proponent or by court order, there is nevertheless a continuing obligation to communicate any new information obtained by the party examined. This result appears desirable. For a party to sit idly by, knowing that a previous answer he has given to an interrogatory is not truthful in the light of his present information, is intolerable. It is inconsistent with the purpose of the rules to avoid surprise, and it is inconsistent with the standards expected in a learned and honorable profession. Failure of a party to give his opponent the added information should be ground for refusing to allow an unnamed witness to testify, or for granting a continuance, or for a new trial, as may seem just." [1]

In King v. Cardin, 229 Ark. 929, 319 S.W.2d 214, 1. c. 217, the court said this: "The appellant insists that the plaintiff was under a duty to amend her response when additional witnesses were found. Otherwise, it is pointed out, a party can never obtain the names of witnesses dis-

covered by his adversary within fifteen days before trial, as the statute allows that much time for answering interrogatories. We agree with this reasoning and hold that the additional names should have been supplied by amendment." The court proceeded to hold that the omission was not prejudicial under the facts of that case, and that the witnesses, under the circumstances, were not surprise witnesses.

We can see no particular merit to a rule which would require successive interrogatories, repeating the same inquiry previously made, in order to obtain later corrected information to the same inquiry. Such a rule results in unnecessary and wasteful effort on both sides.

Likewise, we are not impressed with the procedure occasionally adopted of making the continuing obligation to correct answers contingent on a specific request in the interrogatories that the interrogatories be considered to be continuing inquiries. We are of the opinion that it is better to simply recognize that when the rule calls for a verified answer, it is contemplated that it is correct at the time and will continue to be correct, and that if the answer becomes incorrect by reason of subsequent information obtained, the party has an obligation to correct.

█ We approve of and adopt what the Supreme Court of Minnesota said in Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N.W.2d 110. After pointing out that one alternative would be to require that the other party submit successive interrogatories if he desires later up-to-date information, and that a second alternative would be to have the interrogatories state specifically that they shall be continuing and cover subsequently acquired information, the court proceeded to say, 1. c. 114: "It should be unnecessary to adopt either of these

---

1. For other discussions of this subject, see Anno: Propriety of discovery interrogatories calling for continuing answers, 88 A.L.R.2d 657; The "Continuing" Nature of Discovery Techniques, 42 Iowa Law Review 579; Developments—Discovery— The "Continuing Duty," 74 Harvard Law Review 961; 23 Am.Jur.2d, Depositions and Discovery, § 290, p. 687.

alternatives. To require a party to submit successive interrogatories up to the time of trial in order to obtain information discovered after the interrogatories were once answered seems a useless and burdensome procedure. Similarly, it should be unnecessary to state in the interrogatories that the request is a continuing one. Having in mind the purpose of the rule, we hold that, where the after-acquired information is of a material nature or where it will render the answers originally given untruthful, unreliable, or inaccurate, the obligation to disclose such after-acquired information continues." Subsequently, the court stated further, 1. c. 115; "The application of this rule should not require the disclosure of every bit of information discovered after the answers are served, but should require that any information which is of a substantial nature and which will render the answers theretofore served untruthful, unreliable, or incomplete must be disclosed."

Necessarily, a trial court first will determine whether in the particular situation the opposing party has been prejudiced. The court might find in some instances, as did the Supreme Court of Arkansas in King v. Cardin, supra, that no prejudice resulted; but in cases where a party is surprised and prejudice could have resulted, the court will have to determine, in its discretion, whether to exclude the evidence, or to continue the case, or whether under some circumstances it would be sufficient to recess the case long enough to permit the complaining party to make necessary inquiry and investigation. In those instances, this court, on appeal, would have to consider any claim of abuse of such discretion, but that question is not presented to us here because the trial court did not proceed on the theory that there was any continuing obligation under Rule 56.01. Consequently, it did not exercise its discretion as to sanctions to apply for breach of such duty. Instead, it ruled that when defendant answered correctly at the time, it had fully complied with its obligation, and on that basis plaintiff was not entitled to any relief whatsoever for failure of the defendant to amend its answer to the interrogatory. Under those circumstances, the trial court did not undertake to determine whether the information was vital, nor whether plaintiff was prejudiced, nor what relief it should give under the circumstances to alleviate for failure of the plaintiff to receive the information about the subsequently discovered witness.

 In view of our conclusion about the obligation of the defendant to amend its answer to Interrogatory No. 10 and disclose the discovery of the eyewitness, we necessarily hold that the plaintiff was prejudiced by not receiving that information. Mrs. Abbott was the only eyewitness to testify, other than plaintiff herself, and was a key witness. Accordingly, the case must be reversed and remanded for a new trial.

All of the Judges concur.