Robert Leo EPPERSON and Goldie Epperson, Plaintiffs-Respondents,

v.

Rex NOLAN, William Edward Baker and Gerald Nolan, Defendants-Appellants.

No. 33530.

St. Louis Court of Appeals, Missouri.

Feb. 24, 1970.

Carstarphen, Harvey & Wasinger, Marion F. Wasinger, Hannibal, for plaintiffs-respondents.

Edwards, Seigfreid & Runge, Mexico, for defendants-appellants.

CLEMENS, Commissioner.

Plaintiff Robert Epperson, a one-armed farmer, got a $10,000 judgment for permanent injury to that arm, and he and his wife Goldie got a $1,200 judgment for damages to their pickup truck.

■ The defendants appealed, not from the judgment but from denial of their after-trial motion. Although improper, we view this as a good-faith attempt to appeal from the judgment and deny plaintiffs'

motion to dismiss the appeal. Krekeler v. St. Louis County Board of Zoning Adjustment, Mo., 422 S.W.2d 265 [1–3].

The appeal raises issues on misuse of a highway patrolman's accident report showing the point of impact, the aggressive trial conduct of plaintiffs' counsel, personal contact between the plaintiffs and jurors during trial, and the scope of plaintiffs' damage instruction.

These points concern trial errors, making it unnecessary to relate all the evidence. The collision occurred at the crest of a hill on a narrow snow-packed, north-south gravel road in Ralls County east of New London. Plaintiff Leo Epperson was driving a pickup truck south, uphill toward the crest. Defendant William Baker was driving defendants' oil truck north, also uphill toward the crest. Plaintiff claimed he was driving entirely on his right-hand side as he approached the crest; defendant said his oil truck was a foot or two on his left-hand side of the road as he neared the crest. Because of the crest neither driver saw the other vehicle until they were a few car lengths apart. Neither driver braked, but each swerved to his right, too late. The vehicles sideswiped at the crest, near the center of the road. The left rear of defendants' oil truck struck the left front side of plaintiffs' pickup, severely damaging it near the plaintiff driver. Debris from the vehicles fell on both sides of the road; each driver contended most of it was on his own right-hand side. After the impact each truck went off the road on its own right-hand side. The main issue tried was which vehicle was on its own right-hand side at the time of collision.

Defendants stress the effect of a sketch drawn on a highway patrolman's accident report, contending the court erred by asking a question about the sketch and by denying a mistrial when plaintiffs' counsel improperly tried to get it in evidence. The sketch showed the trucks' post-collision position. Also, in dotted lines it show-

ed the trucks' supposed positions at the time of impact, side by side near the center of the road. Drawn over the diagram of the two vehicles and midway in the road was an encircled "X". The sketch did not support either driver's contention that the impact was on his own side of the road.

When it seemed apparent to defense counsel that his adversary intended to hand a blown-up photo of the sketch to the patrolman-witness, counsel went to the bench. Defense counsel objected to plaintiffs introducing the still unidentified sketch into evidence and asked the court to instruct plaintiffs' counsel not to offer it. The court told counsel it would be error to admit the sketch as an exhibit. Plaintiffs' counsel then had the witness identify the sketch and offered it in evidence. Again at the bench defense counsel complained he was being forced to object to the exhibit, thus giving the jury the impression he was trying to hide it. He stated that the offer "is so objectionable that the court should declare a mistrial under the circumstances." The court did not respond. Instead, still at the bench, there was a three-way colloquy about whether the purpose of the sketch was to describe the supposed point of impact or only the location of debris seen by the patrolman. To resolve this the court asked the witness within the jury's hearing what the encircled "X" indicated. The patrolman answered "the approximate point of impact." Thereupon the court sustained defendants' objection to the exhibit and denied the previous motion for a mistrial.

From this segment of the trial come two claims of error: That the trial court erred in denying the motion for mistrial, and in asking the patrolman the meaning of the encircled "X" on the sketch. First, the issue of mistrial.

■ At defendants' request the court had informed counsel that a sketch showing a point of impact based on hearsay was inadmissible. As said, plaintiffs' counsel then had the sketch identified and of-fered it in evidence. We cannot know his motive. He may have been trying to force defense counsel to object, which might create an unfavorable inference by the jury. Or, since the sketch was not yet identified he may have wanted only to make a record on its admissibility. Granting a mistrial is proper where counsel's conduct has so charged the trial atmosphere with prejudice that the jury can no longer deliberate dispassionately. Green v. Ralston Purina Company, Mo., 376 S.W. 2d 119[8]. Whether such a poisonous atmosphere has been created can best be determined by the trial court, and its ruling will be upheld absent abuse of discretion. St. Louis Housing Authority v. Barnes, Mo., 375 S.W.2d 144 [9]. For comparable cases denying a mistrial see Higgins v. Terminal R.R. Ass'n. of St. Louis, 362 Mo. 264, 241 S.W.2d 380 [13], and Millard v. St. Louis Public Service Company, Mo. App., 330 S.W.2d 147 [6–9]. We cannot see how plaintiffs' mere identification and offer of the sketch was prejudicial. Hence, this point is denied.

■ Defendants also challenge the trial court's question to the patrolman about the meaning of the encircled "X" on the proffered exhibit. The question of its admissibility was before the court. Counsel had made conflicting statements about whether the purpose of the exhibit was to show location of debris or the point of impact. To resolve this the court asked the witness what the mark meant. When told it represented the point of impact the court promptly sustained defendants' objection, thus excluding the exhibit from the jury. Defendants did not object to the court's action until their motion for new trial. We find neither error nor proper preservation of error and the point is denied. Vernon v. Rife, Mo.App., 294 S.W. 747 [11, 12]; Civil Rule 79.01 V.A.M.R.

Defendants next seek to invoke the plain error rule, Civil Rule 79.04 V.A.M.R., based on their claim of plaintiffs' continued use of the inadmissible exhibit. After the court had sustained defendants'

objection to the sketch further examination of the patrolman showed he had to use a copy of his report to refresh his recollection. Later, defense counsel cross-examined him on differences between his testimony and the contents of his report. Twice during this cross-examination plaintiffs' counsel made objections that included suggestions that the sketch, a part of the patrolman's report, be received in evidence. These suggestions may have indirectly implied defense counsel was trying to keep the sketch out of evidence. At defense counsel's request the court promptly instructed the jury to disregard remarks made by plaintiffs' counsel about the sketch.

Defense counsel continued to cross-examine the patrolman about his report. Then: "Q I will ask you if you didn't state in your report, 'Reporting officer was unable to determine the exact point of impact except that debris indicated that it was about the center of the road'? A That's correct." Immediately, on re-direct examination, plaintiffs' counsel reoffered the sketch. When defendants' counsel again objected the court ruled: "Well, in view of what the officer stated the circle with an 'X' in it, meant, or crossarms, I think the objection to this exhibit should be sustained because of the prior statement made by this officer as indicating that to be the point of impact." Despite this favorable ruling, and admittedly for tactical reasons, defense counsel responded: "Your Honor, I am going to withdraw my objection and let that exhibit go in."

■■ Defense counsel now contends he was forced to withdraw his objections to the sketch. In his brief he says he did this "because of the improper questions and comments of counsel and improper questioning by the court, the jury knew exactly what it was that appellants' counsel sought to exclude from evidence, and further objection could only be interpreted by the jury as a desire on the part of appellants to suppress vital evidence." The

exhibit itself was not prejudicial. It showed only that the vehicles had collided near the center of the road. That fact was in evidence by the testimony of both drivers. We note the trial court's memorandum explaining the denial of defendants' after-trial motion: "Too much emphasis was placed upon Exhibit 3 for it was not so helpful to plaintiffs' cause or so harmful to defendants' cause as counsel seemed to believe at the trial." To support the plain error contention defendants cite Breshears v. Union Electric Company, Mo., 373 S.W.2d 948 [4, 5]. Under somewhat similar circumstances concerning the admission of a drawing the court there declined to apply the rule. As said in Fisher v. Williams, Mo., 327 S.W.2d 256 [12, 13]: " * * * resort may be had to the plain error rule in only those exceptional instances 'when the court deems that manifest injustice or miscarriage of justice has resulted therefrom.' "

■ Another of defendants' points relied on says they were denied a fair trial by the "theatrical actions and side comments" of plaintiffs' counsel. The point mentions neither specific acts of counsel nor any action or ruling by the trial court. Civil Rule 83.05 (a, e), V.A.M.R., requires a point relied on to show "what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous." The point made preserves nothing for review. Nonetheless, judicial curiosity prompts us to examine this part of the case. The trial was replete with objections and interruptions. The court was lenient with counsel, giving them free rein, but when asked to rule the court ruled firmly. For example, at one point defense counsel complain plaintiffs' counsel was "wooing" the jury. The court promptly declared: "Wait a minute, let me finish. No lawyer should try to obtain the special favor of a jury by winking or grimacing, or smiling, or showing knowing looks at a jury. That is highly improper conduct, and *if* the Court observes that, I will call attention to it in

open court or declare a mistrial." (Our emphasis). There were no further complaints about the conduct of counsel. In support of this claim of misconduct defendants introduced after-trial evidence. The wife of defendant Rex Nolan testified that while sitting some forty feet away, she saw plaintiffs' counsel make remarks to the jury which evoked smiles from some of them; that plaintiffs' counsel once winked at a witness. The verity of this and its effect, if any, on the verdict was for the trial court to determine.

■■■■ To repeat the claimed misconduct in summary: There was no timely objection to plaintiffs' counsel's action in initially having the sketch identified and offering it in evidence. In any event he was entitled to make such an offer. When defense counsel did object to the subsequent remarks of plaintiffs' counsel concerning the admission of the sketch and asked the court to instruct the jury to disregard those remarks, the court did just that. (The jury finally saw the sketch and it was harmless.) When defense counsel objected to by-play by plaintiffs' counsel the court indicated it had observed none, but would not tolerate it if seen. The after-trial testimony about counsel making remarks to the jury was either not fully accepted by the court or deemed insufficient to upset the verdict. The trial court had the unique opportunity of assessing counsel's conduct and determining its effect upon the verdict. Denial of a new trial was a discretionary ruling. Appellate courts will interfere with a trial court's exercise of discretion "only when the trial court's ruling runs against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice." Kasper v. Helfrich, Mo.App., 421 S.W.2d 66 [1–5]. We do not so view the trial court's denial of a new trial. Our holding is not meant to condone "theatrical action and side comments." Such conduct is condemned by Sup. Ct. Rule 4.22 V.A.M.R.

Here, the existence of such conduct and its effect on the trial were primarily for the trial court to decide. By its denial of a new trial the trial court found against defense contentions, and we accept that conclusion.

■■■■ By still another abstract point defendants complain that plaintiffs and their relatives conversed with jurors during trial. This preserves nothing for review. However, we note that when this complaint was made the trial court promptly held an evidentiary hearing. It showed only that plaintiffs' son-in-law, a spectator at the trial, had a short, casual conversation with a juror concerning the funeral of a mutual acquaintance. The court found the encounter devoid of any influence on the jury.

■■■■ Defendants' last point concerns plaintiffs' MAI 4.01 with the prescribed future damage clause. Defendants first complain that the instruction disregarded their contention that part of plaintiff Robert Epperson's physical injuries arose from another occurrence. We need not explore this. Neither at trial nor in their after-trial motion did defendants make any such objection so it is not preserved for review. Chambers v. Kansas City, Mo., 446 S.W.2d 833 [8, 9]; Vinyard v. Vinyard Funeral Home, Inc., Mo.App., 435 S.W.2d 392 [4–6].

■■■■ The second complaint is that the MAI 4.01 permitted an award for future damages to plaintiffs' truck. The use of MAI 4.01 is mandatory in cases concerning both personal injuries and property damages. See Notes on Use of MAI 4.02 and Committee Comment under MAI 4.01: "The instruction is short, simple and easily understood. Since no particular items of damage are set out, there is no risk of the jury being improperly instructed on damages not supported by the record." Plaintiffs' evidence properly concerned the before-and-after value of their truck; nothing was said about future

damage to the truck. We cannot conceive of the instruction misleading a jury of reasonable men, and that is a proper test for use of MAI 4.01. Stewart v. Sioux City & New Orleans Barge Lines, Inc., Mo., 431 S.W.2d 205 [10]. Furthermore, generality in MAI 4.01 is cured by a defendant's failure to offer a more specific damage instruction. Miller v. Ranson & Co., Mo.App., 407 S.W.2d 48 [11]. The complaint is denied.

Finding no reviewable error materially affecting the merits of the action, judgment is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, motion to dismiss the appeal is denied and the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.