**MISSOURI STATE PARK BOARD,**
Plaintiff-Appellant,

v.

**Earl McDANIEL and Dorothy J. McDaniel, Husband and Wife, Defendants-Respondents.**

No. 9092.

Springfield Court of Appeals, Missouri.

Oct. 20, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 8, 1971.

Application to Transfer Denied Jan. 10, 1972.

John C. Danforth, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

Morgan M. Moulder, Camdenton, for defendants-respondents.

TITUS, Presiding Judge.

The Missouri State Park Board (§ 253.020)[1] instituted this condemnation suit to acquire for park purposes (§ 253.040) 40 acres allegedly owned by defendants "lying within Lake of the Ozark State Park." Plaintiff (the board) excepted to the $14,000 commissioners' award and now appeals from the judgment entered on the jury's verdict which fixed defendants' damages at $20,000.

Acceding to defendants' objections, the trial court refused to permit the board's only "expert valuation witnesses" (Greene, Webb and Johnson) to testify because their names had not been revealed to defendants in answers to propounded interrogatories and because defendants and their counsel were unaware that the three proposed witnesses had appraised the property for the board until their testimony was proffered at trial. When defendants objected to this testimony, the trial court

also denied the board's "motion for a continuance to allow [defendants] opportunity to adjust their case in light of these previously undisclosed witnesses." The board's first point on appeal is that these sanctions, which the trial court imposed upon the erring plaintiff, constituted an abuse of discretion.

Under date of January 30, 1969, defendants asked the board Interrogatory No. 16: "State the names and addresses of all persons who have made an appraisal of said land for or on behalf of the Plaintiff and the valuation placed thereon by each such person." Without objecting, plaintiff answered the interrogatory on February 6, 1969, by stating the name and address of "Mr. J. Raymond Brummet" and advising, "Valuation: $2,600.00."[2] No amendments or additions were ever made to the interrogatory answer. Trial was commenced and concluded on August 12, 1970. It developed in a hearing conducted out of the jury's presence that the intended witnesses had appraised the 40 acres for plaintiff some seven or eight months prior to trial.

Any party may employ the discovery devices of written interrogatories [State ex rel. Pete Rhodes Supply Company v. Crain, Mo. (banc), 373 S.W.2d 38, 44(2, 3)] or deposition upon oral examination [Thomas v. Fitch, Mo.App., 435 S.W.2d 703, 707], or both [Rule 56.01(a)], to ascertain from his adversary "the identity and location of persons having knowledge of relevant facts" [Rule 57.01(b)], whether such persons came by their knowledge through sheer chance or by design as investigators or experts. Smith v. Wabash Railroad Company, Mo. (banc), 416 S.W.2d 85, 89(7); State ex rel. Mueller v. Dixon, Mo.App., 456 S.W.2d 594, 600. If the interrogated party gains knowledge of other and additional witnesses subsequent to having once answered a written interrogatory requiring such information, he has a continuing duty

1. Statutory and rule references are to RS Mo 1969, V.A.M.S., and to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R.

2. The testimony of Mr. Brummet was not offered at trial.

to convey the added information to the interrogating party "where the after-acquired information is of a material nature or where it will render the answers originally given untruthful, unreliable, or inaccurate" [Laws v. City of Wellston, Mo., 435 S.W.2d 370, 375(2)], and a trial court is vested with broad discretion to either admit or reject the testimony of witnesses whose names, though known to the party, were not disclosed to his adversary by answers to written interrogatories. Keyte v. Parrish, Mo.App., 399 S.W.2d 601, 605(7); Aulgur v. Zylich, Mo.App., 390 S.W.2d 553, 556–557(2, 3); Annotations: Discovery—Names of Witnesses, 37 A.L.R.2d 1152–1165, and Discovery—Disclosure of Witnesses, 27 A.L.R.2d 737–739. Trial courts are additionally vested with authority to impose certain conditions as prerequisites to the admission of the testimony of undisclosed witnesses. Therefore, the question arises: Did the court nisi abuse its discretion by not permitting the board's expert witnesses to testify and by not granting plaintiff's motion for a continuance to afford defendants an "opportunity to adjust their case in light of these previously undisclosed witnesses"?[3]

The exact situation which confronted the trial court bears little or no resemblance to the predicaments encountered in any reported case to which we have been directed or have unearthed by independent research. Therefore, we purposely shy from the frequently misleading and frustrating practice of attempting to reconcile divergent factual situations and attend initially to the discovery of germane principles applicable in this and like instances. Before a trial court imposes drastic sanctions for nondisclosure of witnesses, "it should appear that violation of the rule has or will result in prejudice to the party asserting the violation. * * * The object of sanctions should be

to prevent the party who fails to comply with the rule from profiting by his own violation. In cases where there is an honest mistake and the harm can be undone, it may frequently occur that a continuance or some other remedy would be adequate but, where the violation is willful and the party guilty of the violation seeks to take advantage of it at a time when the harm cannot be undone, suppression of the evidence may very well be the proper and only available remedy." Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N.W.2d 110, 115(5–7). "[W]here a party is surprised and prejudice could have resulted, the court will have to determine, in its discretion, whether to exclude the evidence, or to continue the case, or whether under some circumstances it would be sufficient to recess the case long enough to permit the complaining party to make necessary inquiry and investigation." Laws v. City of Wellston, supra, 435 S.W.2d at 375. The trial court should act "to prevent the party propounding the interrogatories from being misled and prejudiced and to protect the answering party against his own mistake or inadvertence." Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 429(11). Account should also be taken of the time when the violation comes to light, i.e., if the transgression is made known before commencement of the trial, a continuance might be proper provided serious harm will not result to the complaining party, but considering the infeasibility of granting a recess after a trial has commenced, especially in the middle of a jury trial, the only practicable remedy may be to exclude the testimony of the surprise witness. 74 Harvard Law Review, Developments—Discovery, at pp. 962–963. If the undisclosed witness is offered at trial to testify to merely formal matters, or if his testimony is cumulative of other evidence, the interrogat-

3. A "continuance" is generally understood to constitute a postponement of the trial before it commences (17 C.J.S. Continuances § 1, p. 373; Rule 65), whereas a "recess" indicates a temporary suspension of a trial already in progress. 76 C.J.S. Recess p. 61. Consequently, we assume that plaintiff actually sought a recess of the trial, because at the time of its motion defendants had presented their evidence and rested.

ing party may not be prejudiced by the testimony albeit he is surprised by the production of the witness. Likewise, if the witness is one whom the interrogating party would normally have interviewed in a routine investigation, it has been said that the objecting party, who does not claim surprise, would not be prejudiced by the admission of the testimony. King v. Cardin, 229 Ark. 929, 319 S.W.2d 214, 217–218(5). We additionally believe the trial court should ponder how the denied information could have been put to real and functional use by the interrogating party had it, in fact, been supplied with the identity of the witness when due. The violator has a duty, "by a sound and compelling showing of just cause" (Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc., Mo.App., 317 S.W.2d 841, 847), to demonstrate why he failed to comply with the rule if he is to avoid the consequences which the court may properly apply for violation. There are, of course, other facts upon which a trial court must dwell to gain understanding of the correct course to follow—these, of necessity, will depend upon the particular circumstances and showing in each individual case.

We glean from the reported colloquy between court and counsel which ensued from defendants' objections, that the court, in addition to hearing testimony and considering arguments, took time to reacquaint itself with the opinion in Laws v. City of Wellston, supra, 435 S.W.2d 370. Plaintiff has not contended at any time that defendants were not genuinely surprised by the identity of the three proposed witnesses, but argues that defendants' counsel should have been prepared to cross-examine all land value experts, whoever they might have been, and that the trial court could have undone the harm produced by the board's violation of the rule by granting a "continuance [recess] of this trial for the purpose of allowing defendant time to interview by deposition, or whatever," the surprise witnesses. The court acknowl-

edged the alternative sanctions available and, in response to pointed inquiry if the exclusion of the witnesses was to be predicated "on a determination of prejudice," stated: "I don't think it would be much question as to prejudice to them, a witness they won't know about, and had no knowledge of, for the purpose of cross examination."

In most all eminent domain cases the paramount issue concerns the amount of the condemnees' damages (State ex rel. State Highway Commission v. Davis, Mo. App., 466 S.W.2d 172, 173) and that was the principal issue in this cause. The board's surprise witnesses were called to testify on this subject; they were not offered as cumulative witnesses or ones to speak on formal matters. Defendants, in view of their interrogatory, had the right to know the identity of plaintiff's appraisers and to take their pretrial depositions if desired. State ex rel. Uregas Service Co. v. Adams, 364 Mo. (banc) 389, 394, 262 S. W.2d 9, 12. Although, if proper objections were made,[4] defendants would not, either via discovery interrogatories or depositions, have the right under Rule 57.01(b) to require plaintiff or its experts to produce the contents or substance of the appraisal reports [State ex rel. State Highway Commission v. Jensen, Mo. (banc) 362 S.W.2d 568, 570(2)] or to require the opinions and conclusions of such experts [State ex rel. Missouri Public Service Co. v. Elliott, Mo. (banc), 434 S.W.2d 532, 537–538(7)], this would not have prohibited defendants' counsel from deposing or otherwise interviewing these prospective witnesses or from conducting pretrial investigations regarding their qualifications. Information defendants may have learned from pretrial depositions, interviews and investigations might have been most important for cross-examination and other purposes, and the defendants' pretrial ignorance of the identity of the three witnesses could very well have resulted to their prejudice as they claim and as the trial court

4. Which plaintiff neglected to voice when Interrogatory No. 16 was propounded.

**778**

found. Plaintiff has not undertaken to excuse its violation as being a mistake or an inadvertence; neither has it made "a sound and compelling showing of just cause" for its failure to provide defendants with the identity of its witnesses during the seven or eight months prior to trial that the witnesses were known to the board. The surprise witnesses were offered by plaintiff after defendants had presented their case and rested. A recess of the trial at that time, to permit defendants to depose the experts and make whatever investigation and arrangements may have been required, would have necessitated an interruption lasting several days, which is a most infeasible and unwelcome situation to inject into any jury trial.

Appellate courts should not employ the rule of deference as a simple device to salve prejudicial error committed by trial judges in discretionary matters. Littell v. Bi-State Transit Development Agency, Mo. App., 423 S.W.2d 34, 41–42(21). On the other hand, in reviewing an act performed in the exercise of judicial discretion, an appellate court is not justified in unseating the trial judge and determining the cause as it would have done had it been sitting at the trial bench. A trial court's discretion is deemed abused only when its ruling runs counter to the logic of presented circumstances and is so unreasonable and arbitrary as to shock the sense of justice and demonstrate a lack of careful consideration. Epperson v. Nolan, Mo.App., 452 S.W.2d 263, 268(9). "[I]f reasonable men can differ about the propriety of the action taken by the trial court, then the trial court did not abuse its discretion." Kasper v. Helfrich, Mo.App., 421 S.W.2d 66, 69(4). Bottomed on these principles and what has been said before,

we may not hold that the trial court, under the conditions peculiar to this case, abused its discretion by excluding the testimony of the board's three experts or by refusing plaintiff's motion for a continuance.

■ Plaintiff's second appeal point consists of a claimed error by the trial court in permitting defendants to adduce evidence of the proposed lease of state park land near the condemned tract for the purpose of constructing a multi-million dollar resort complex because the "proposed use by the condemnor of land it already held was speculative and conjectural,[5] and had no relation to the fair market value of the condemned tract." This claim of error stems from the testimony of the board's chief planner and assistant director who were called as witnesses by the defendants. It was shown that defendants' acreage was completely surrounded by land already owned by the board and that included in this already-owned land was a sizeable area around and including Camp Red Bud, situate one-fourth of a mile from the condemned 40 acres. When defendants undertook to elicit from these witnesses what the board's plans were for the general Red Bud area, plaintiff objected because the questions called for a "proposed use and has no relation to the value of the land condemned as of this date." The objections were overruled. Thereafter, these witnesses testified that the board had advertised for bids for "private individuals under a long term lease" to construct on the board's already-owned property a "complex of various resort facilities and resorts" at an estimated cost of five million dollars, that seven bids had been received on the project, and that one of these bids was then pending subject to the production of "a financial statement which would assure [that

---

5. The objection that the proposed use was "speculative and conjectural" is raised for the first time in plaintiff's brief on appeal. This was not part of the objection made to the trial court when the questions were asked; neither was this part of the objection preserved in the motion for new trial. As an appellant is

not permitted to broaden the scope of his objection on appeal beyond that made in the trial court [Dyer v. Globe-Democrat Publishing Co., Mo., 378 S.W.2d 570, 582(9)], we shall disregard the unauthorized expansion undertaken by plaintiff on appeal.

the bidder was] a solid company to undertake such a development." Without objection from the plaintiff, one of defendants' expert witnesses said he had the proposed resort in mind when he appraised the condemned tract, and defendant Earl McDaniel opined the resort would enhance the value of the property.

The briefs lead us to the rules that in cases of this character, damages are not to be assessed on the basis of the condemnor's need for the land or the value of the property when put to the use for which it was taken [Union Electric Company v. Pfarr, Mo., 375 S.W.2d 1, 8; State ex rel. State Highway Commission v. Howald, Mo., 315 S.W.2d 786, 790(6)], and that ascertainment of value may not be predicated upon a specific intended use by the landowner if the proposed use is dependent upon events or a combination of occurrences which, while in the realm of possibility, are not fairly shown to be reasonably probable (Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 764-765, 268 S.W.2d 78, 81) or are not shown to relate to a demand in the community for such proposed future use. Northeast Missouri Electric Power Coop. v. Todd, Mo.App., 401 S.W.2d 161, 164(3). We do not argue with these authorities; we simply say they are not pertinent here. There was no evidence of the intended use of the condemned 40 acres by the park board (other than to acquire the acreage as a part of the general park system), and there was no attempt to equate the value of the property with any particular future use contemplated by the defendants. It is our understanding that the objected-to evidence was designed to demonstrate how the board's use of its already-owned land affected the value of adjacent or nearby lands, including the defendants' 40 acres.

We are mindful of the general rule, with which neither side was apparently concerned, that if the property taken is merely a continuation of a previously conceived total project of the condemnor, the landowner may not recover, as a part of his compensation, the enhancement in the value of his property resulting from partial completion of the overall undertaking. However, if the project as originally contemplated did not include the property subsequently condemned, then the landowner is entitled to the enhancement in the value of the land due to the improvement. St. Louis Electric Terminal Ry. Co. v. MacAdaras, 257 Mo. 448, 463-464, 166 S.W. 307, 310; 27 Am.Jur.2d, Eminent Domain, § 284, p. 82. Nothing in the record indicates that defendants' land was to be included in the area to be leased by the board for the construction of a "complex of various resort facilities." In fact, the resort complex was frequently described as being a quarter of a mile from the 40 acres. Consequently, it is reasonable to conclude that the taking of defendants' land was not conceived as a part of the project undertaken in the Camp Red Bud area.

Inasmuch as many elements properly enter into a determination of the market value of real estate, the inquiry may properly be allowed to take a wide scope. Hard & Rand v. Biston Coffee Co., 8 Cir., 41 F.2d 625, 627(8). The landowner is entitled to have the jury informed as to all facts relating to the condemned property which would naturally impress a person of ordinary prudence in negotiating for its purchase. State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, 309(1). This would include every advantage that the property possesses, present or prospective, that would affect its market price [Arkansas State Highway Commission v. Carder, 228 Ark. 8, 305 S.W.2d 330, 332(2)], bearing in mind that the prospective advantages may not relate to future worth of the land but to its present worth in view of the future. Portland & R. R. R. v. Inhabitants of Deering, 78 Me. 61, 2 A. 670, 671. In fine, the admissibility of evidence in a condemnation case depends upon whether it tends to help the jury in arriving at the issue of value and damages. State ex rel. State Highway Commission v.

Rauscher Chevrolet Company, Mo., 291 S. W.2d 89, 95(5), 55 A.L.R.2d 773, 780–781. The condemned property's location in relation to business, recreational or residential areas, the availability of sewers, and the uses made of adjacent properties are a few illustrative examples of evidence which is admissible to demonstrate value. North Kansas City Sch. Dist. of Clay County v. J. A. Peterson-Renner, Inc., Mo., 369 S. W.2d 159, 166(9); 5 Nichols on Eminent Domain, 3d ed., § 18.11[1], at pp. 18–48 and 18–49. Likewise, we are of the opinion that the nearness of a landowner's acreage to property that has been advertised as a proposed site for the location of a five million dollar resort complex, is a factor which would reasonably influence a prospective purchaser, although admittedly the completion and continuation of the complex would be something over which the landowner has no control. City of Tulsa v. Creekmore, 167 Okl. 298, 29 P.2d 101, 104(3); 29A C.J.S. Eminent Domain § 160, at p. 684; 1 Nichols on Eminent Domain, 2d ed., § 219, at p. 668. Therefore, we deny plaintiff's second complaint on appeal.

■ Plaintiff offered an instruction charging the jury "that it should not consider the possibility that the defendants or persons to whom they might have sold the condemned land could obtain a road easement or way of necessity across State owned land to said condemned land. In placing a value on the subject land, you should consider the land in its present condition, that is without a road or way of necessity giving access to it." The trial court's refusal to give this instruction is the plaintiff's third claim of error on appeal.

Defendants' property, as previously noted, was completely surrounded by land belonging to the park board. Plaintiff's counsel, in questioning defendants' witnesses, repeatedly emphasized that the subject property had "no road into it." On cross-examination, for the apparent purpose of impeaching the value figure stated in his direct testimony, one witness agreed that he had appraised the property on the "probability" that a road could be "cut in." Another witness based his appraisal on the fact that the land had no "more than a trail going into it," while a third witness stated that the acreage would have a higher value than his appraisal if it had a "better access road" but that the absence of an existing way would not be a deterrence to a prospective buyer if the land could be acquired at his appraisal figure. Defendant Earl McDaniel admitted there was "no road, just a trail" into the property and that his efforts to obtain "an easement" across the park land from the park board and the legislature had been unsuccessful.

The offered and refused instruction falls within the category denominated as "cautionary." Giving a cautionary instruction rests largely within the discretion of the trial judge. Barnes v. Marshall, Mo., 467 S.W.2d 70, 78–79(10); State ex rel. State Highway Commission v. Warner, Mo.App., 361 S.W.2d 159, 165(12). A fortiori, the refusal to give such an instruction is also discretionary. Gathright v. Pendegraft, Mo., 433 S.W.2d 299, 312(20). In light of the questioning and testimony aforesaid, it is most unlikely that the jury could have been misled into believing there was a road leading to the condemned property on the date they were instructed to ascertain the fair market value of defendants' land. Plaintiff neither claims that the verdict is excessive nor asserts that the trial court abused its discretion in refusing to give the offered instruction. There is no attempt to show that the jury based its finding of value on what the property would have been worth with an access road. To the contrary, the size of the verdict attests that the jury rejected all suggestions of the property's worth had there been, in fact, a roadway leading to the land. We are of the opinion that refusal of the instruction under the circumstances was not an abuse of discretion and, therefore, was not prejudicial to the plaintiff and did not result in reversible error.

■ Finally, plaintiff says that the judgment erroneously provides for the payment of interest on the principal sum awarded from the date of the filing of the commissioners' report. It would appear to us that under the facts in this case the first sentence of § 523.045 makes such a provision perfectly correct. But be that as it may, this contention was not set forth in plaintiff's motion for a new trial and, hence, has not been preserved for review upon appeal. Rules 79.03 and 83.13(a); Dudeck v. Ellis, Mo., 399 S.W.2d 80, 97(18); Aiple v. South Side National Bank in St. Louis, Mo.App., 442 S.W.2d 145, 148(3).

The judgment is affirmed.

STONE and HOGAN, JJ., concur.