**STATE of Missouri, Plaintiff-Respondent,**

v.

**Crowley YARBROUGH, Defendant-Appellant.**

**No. 35194.**

Missouri Court of Appeals, St. Louis District, Division Two.

Feb. 5, 1974.

David M. Adams, James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant, Crowley Yarbrough, appeals from the judgment on a jury verdict entered by the Circuit Court of the City of St. Louis convicting him with the offense of exhibiting a deadly weapon in a rude, angry, and threatening manner, § 564.610, RSMo 1967, V.A.M.S. The defendant was sentenced by the court to three years in the custody of the Department of Corrections pursuant to the Second Offender Act, § 556.280, RSMo 1969, V.A.M.S. We affirm the judgment of the Circuit Court.

Inasmuch as the defendant does not challenge the sufficiency of the evidence but claims that he is entitled to a new trial, having been deprived of his right to a fair trial by reason of an erroneous instruction and prejudicial conduct of the prosecutor, we give a brief narrative of the facts.

On the evening of May 3, 1972, Rose Hicks and James Hoyle went to Jefferson School on Hogan Street in St. Louis to pick up Rose Hicks' adolescent son. Inside the building, near the gymnasium, defendant approached Rose Hicks with gun in hand saying, "I heard you were looking for me." She testified that she was not acquainted with the defendant. As Hoyle, who had previously been acquainted with the defendant, approached the two, the defendant repeated a similar remark to him. Then the defendant handed the revolver to an individual accompanying him and the two went on their way. Soon afterward Hoyle and Rose Hicks, enroute to a police station, flagged a patrol car and reported the incident. The same day both Hoyle and Rose Hicks identified the defendant from photographs shown them by the police, and again in a lineup a day later.

A defense witness testified that several days prior to the incident complained of and defendant's subsequent arrest, defendant and other companions, including the witness, were threatened by Hoyle which culminated in an altercation between the defendant and Hoyle.

A second witness, the defendant's sister, stated that a man whom she identified in court as James Hoyle came to her home and threatened "to get" her brother, the defendant. This also occurred several days before the defendant's arrest for the occurrence at Jefferson School.

A proffer of evidence which would tend to establish a relationship between Hoyle and Rose Hicks such that their mutual interests in the outcome of the case would be detrimental to the defendant was not admitted over objection.

Defendant claims the court committed error in (1) submitting to the jury Instruction No. 2 on the burden of proof in that

its language, employing the terms "reasonable doubt" and "substantial doubt," confused and misled the jury; and (2) overruling defendant's objection to the prosecuting attorney's misconduct and improper argument during trial which effectively poisoned the minds and inflamed the passions of the jury and deprived the defendant of his right to a fair trial.

Defendant's first contention challenging as reversibly prejudicial the burden of proof instruction would, ordinarily, not be preserved for review by this court. The requirement that allegations of error must be presented to the trial court either by specific objections at trial or in the motion for a new trial was not complied with. Rule 28.01, V.A.M.R. See Rules 70.02, 79.-03. Defendant here argues, however, that this point is reviewable by this court by virtue of Rule 27.20(c) providing for review of plain errors affecting substantial rights.

The court, in its discretion, may apply the rule upon a showing that manifest injustice or a miscarriage of justice has resulted. Furthermore, this rule has been invoked where instructions to the jury have contained "objectionable language." State v. Randall, 476 S.W.2d 593 (Mo.1972). The form of the instruction challenged here[1] has been upheld many times over since its first use in State v. Nueslein in 1857, 25 Mo. 111, 124 and most recently in State v. Tindall, 496 S.W.2d 267 (Mo.App. 1973).

We note Justice Seiler's dissent from the majority opinion in State v. Davis, 482 S.W.2d 486, 489–490 (Mo.1972), in which he quoted the learned Justice Holmes. He was concerned with higher courts' proclivity toward merely citing precedent as a substitute for analysis and discussion. The *Davis* majority again upheld the same instruction attacked here; Justice Seiler favored elimination of its continued use.

In any event, MAI—C.R. 2.20, effective January 1, 1974, provides a pattern criminal burden of proof instruction for exclusive use as of January, 1974. The new form prohibits any elaboration on or definition of reasonable doubt. The rules, however, are prospective in operation and not retrospective.

As already indicated in numerous cases this very instruction has been attacked and upheld by the courts as reflecting the state of the law in Missouri prior to January, 1974. State v. Barton, 361 Mo. 780, 236 S.W.2d 596 (Mo. banc 1951); State v. Wilfong, 438 S.W.2d 265–266 (Mo. 1969) cert. dism. 396 U.S. 995, 90 S.Ct. 496, 24 L.Ed.2d 460; State v. Key, 411 S.W.2d 100, 103 (Mo.1967); State v. Edwards, 435 S.W.2d 1 (Mo.1968); State v. Sockel, 485 S.W.2d 393 (Mo.1972); State v. Scott, 491 S.W.2d 514 (Mo. banc 1973). These courts have found neither manifest injustice nor a miscarriage of justice resulting to the defendant by virtue of the submission. We cannot say here as a matter of law that a jury of reasonably intelligent men and women were confused and misled by the instruction in returning their verdict against this defendant.

Defendant's second contention consisting of three parts is that by the trial judge's overruling of defendant's objections to the conduct and arguments of the prosecutor at trial, the defendant was de-

---

[1]. "You are further instructed that the Information contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt.

"The law presumes the defendant to be innocent and this presumption continues until it has been overcome by evidence which establishes defendant's guilt to your satisfaction and beyond a reasonable doubt; and the burden of proving defendant's guilt rests with the State.

"If, however, this presumption has been overcome by the evidence and the guilt of the defendant established beyond a reasonable doubt, your duty is to convict.

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit, *but a doubt to authorize an acquittal on that ground ought to be a substantial doubt* touching the defendant's guilt and not a mere possibility of defendant's innocence." (Emphasis added.)

nied a fair trial. He argues that such occurrences poisoned the minds and inflamed the passions of the jury.

Counsel for the defendant recognizes that determination of the prejudicial effect of improper argument and behavior of attorneys is a matter reposed in the sound discretion of the trial court, vulnerable to attack on appeal only upon showing of a clear abuse of discretion. The well-settled test is whether the conduct complained of and the judge's ruling upon objection goes against the logic of the circumstances, is arbitrary, unreasonable, and is such that it shocks the sense of justice. James v. Turilli, 473 S.W.2d 757, 763 (Mo.App.1971); Missouri State Park Board v. McDaniel, 473 S.W.2d 774, 778 (Mo.App.1971).

■ Taking each instance individually —first, the prosecutor appended a comment to his objection to defense counsel's inquiry as to where witness Hoyle lived. He stated that he would not ". . . have his (Hoyle's) address released in front of this defendant." At the Bench the stated basis was the irrelevance of the question as opposed to implication to the jury that, if released, defendant would seek his own retribution against witness.

Defense counsel objects to this incident as histronics employed by the prosecutor to instill fear in the jury for their own well-being if the defendant would be released; and further, implied knowledge by opposing counsel of evidence of defendant's guilt not presented to the jury. Counsel complains that the court not only allowed this incident to occur over defense objections, but also failed to instruct the jury to disregard the complained of remarks.

Here, the trial judge recognized the possible prejudicial effect of the prosecutor's remark, but made the determination that his unfortunate choice of words did not adversely affect the jury. Since the trial court had the unique opportunity to assess counsel's conduct and to determine its effect on the verdict, we will interfere with its discretion only when its ruling is contrary to logic and is so arbitrary and unreasonable as to show a lack of careful consideration and shock the sense of justice. Epperson v. Nolan, 452 S.W.2d 263, 266 (Mo.App.1970). In our opinion, the foregoing statement applies to the instant case; therefore, we defer to the trial court's judgment in the matter.

■ Secondly, in summation, the prosecutor on one occasion while reiterating the facts shaped his hand in the form of a gun, pointing at the jury from where he stood only a few feet away.

We view this as an attempt by the prosecutor to demonstrate to the jury the proximity of defendant to Rose Hicks when defendant threatened her with a gun. In State v. Murray, 280 S.W.2d 809 (Mo. 1955), the prosecutor, in the closing argument in an armed robbery case, took up the weapon and waved it in front of the faces of the jury. There the court held that while a cautionary word to the jury might have been in order, the trial court did not abuse its discretion in refusing to grant a mistrial. Obviously, if it was not reversibly erroneous for the prosecutor to wave a real gun in the faces of the jury, it escapes us as to how waving one's hand in the shape of a gun could be considered reversible error. We rule this claim of error against defendant.

■ Finally, the prosecutor characterized the defendant as a self-style "judge, jury and executioner" for James Hoyle for whatever threat the latter may have made to the defendant. This third bit of conduct is more troublesome than either of the other two episodes. While it is true that a defendant is on trial for what he has or has not done and not for what he might do, State v. Raspberry, 452 S.W.2d 169 (Mo.1970), it is also clear that each time a prosecutor exceeds the limits of legitimate argument a mistrial is not declared. Because a mistrial is such a drastic remedy, it should be granted only in extraordinary circumstances. This case is distinguishable

**94**

from the remarks made by the prosecutor in State v. Chester, 445 S.W.2d 393 (Mo. App.1969) which conveyed the impression that counsel knew some facts not in the record. Here, a reading of the context of the argument makes it abundantly clear that the prosecutor was attempting to rely upon inferences to be drawn from the record in making his characterization. In State v. Kuever, 363 S.W.2d 31 (Mo.App. 1962), the prosecutor was permitted to make a comparison between careless and imprudent driving, which the defendant was charged with, and the crime of burglary. There the court said, ". . . While it is true that a prosecutor should confine his argument to the facts at hand, he is allowed considerable latitude in seeking to impress the jury with the seriousness of the offense for which the defendant is standing trial. . . " Here, the prosecutor was trying to impress the jury with the seriousness of defendant's conduct. Accordingly, we hold that under the facts in evidence in this case the prosecutor's argument did not exceed the bounds of legitimate argument. See also State v. McBride, 231 S.W. 592 (Mo.1921).

While it is true that the trial judge has the duty to take corrective action to relieve any possible prejudicial effect, it is likewise true that while collective and cumulative misconduct may be prejudicially erroneous and tantamount to a denial of a fair trial, accumulation of non-erroneous incidents cannot result in reversible error. Gathright v. Pendegraft, 433 S.W.2d 299, 317 (Mo.1968).

In our opinion, after careful consideration of the record, we are constrained to hold that while, perhaps objectionable, the incidents complained of here did not result in the deprivation of the defendant's substantial rights or a fair trial.

Accordingly, we affirm the judgment of the Circuit Court.

SMITH, P. J. and CLEMENS, J., concur.