STATE of Missouri ex rel. STATE HIGHWAY COMMISSION, Plaintiff-Respondent,

v.

Earl MOULDER, on Exceptions of Austyn O. Swenson and Justine Swenson, Defendants-Appellants.

No. 9739.

Missouri Court of Appeals, Springfield District.

Feb. 15, 1977.

Rehearing Denied March 7, 1977.

Bruce A. Ring, Jefferson City, George M. Johnson, William T. Powers, Jr., Springfield, for plaintiff-respondent.

Charles C. Shafer, Jr., A. Howard Chamberlin, Kansas City, for defendants-appellants.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

This case was reassigned to the writer for opinion. Mr. and Mrs. Swenson, the defendants, were owners and developers of an 80-acre subdivision known as Eastwood Hills. By condemnation the State Highway Commission of Missouri (state) took 8.23 acres of this land, plus .03 acres for a permanent drainage easement, for the construction of U.S. 65 By-Pass located east of Springfield. Defendants calculated their damages at $344,475, while witnesses for the state opined defendants' damages ranged from $80,450 to $100,000. The jury assessed defendants' damages at $127,500 and they appealed.

A defendants' point relied on which we initially consider has the following factual background. It is gleaned from the record that during pretrial conversations or conferences the state's lawyer and perhaps also the trial judge were advised that only Mr. and Mrs. Swenson would appear as expert witnesses on their own behalf. The transcript further reflects that before defendants' present counsel became involved in the matter, defendants were represented by an attorney who died ere the cause came to trial. The deceased attorney had engaged Hubert Riebold and maybe another as appraisers to familiarize themselves with the damages defendants would or had sustained because of the eminent domain taking by the state. During presentation of defendants' case-in-chief, and while Mr. Swenson was being cross-examined by state's counsel, this happened: "Q. Mr. Swenson, did you ever employ a real estate expert to appraise this for you? A. Yes, sir. Q. Why are they not here? A. Because one of them looked you up and discussed it with you. . . . Q. What about Hubert Riebold? . . . THE WITNESS: I have no confidence in him. Q. Which one? A. Hubert Riebold. Q. Did he make an appraisal for you? Don't give me the figures; did he make an appraisal for you? A. I believe so."

After defendants rested, the state started its case-in-chief with two expert witnesses on damages. When the state indicated its third expert witness was to be defendants' appraiser Riebold, who was present in response to subpoena, defendants entered their vehement objections. As they do now on appeal, both sides relied on State ex rel. State Highway Commission v. Kalivas, 484 S.W.2d 292 (Mo.1972). The state argued to the trial court (repeated to this court) that Kalivas was authority for permitting it to use Riebold as an expert witness. Defendants urged (as repeated here) that Kalivas and State ex rel. State Highway Commission v. Crain, 496 S.W.2d 867 (Mo.App.1973) required sustention of their objections. Although declaring itself dubitante, the trial court overruled defendants' objections and permitted Riebold to testify for the state. Defendants say this was "Gross error."

Readers hereof are cautioned to observe that the instant case was tried and that Kalivas and Crain were written prior to the effective date (January 1, 1975) of present Supreme Court Rule 56, V.A.M.R., entitled "General Provisions Governing Discovery." We shall not concern ourselves with the effect, if any, present Rule 56 may have on the holdings in the reported cases, supra, nor how the rule might have affected this cause had it been in force when the case was tried.

In Kalivas, defendants-condemnees employed three appraisers to establish their damages. Two of the appraisers testified

at trial; the third appraiser did not, and his services apparently had been terminated by defendants. When one of the defendants took the stand to testify during defendants' case-in-chief, he was asked on cross-examination about the employment of the nontestifying appraiser employed by defendants. During its case-in-chief after defendants had rested, the state undertook to call the appraiser not produced by the defendants for the purpose of placing his opinion as to damages before the jury. The trial court refused to permit the proposed witness to testify on the ground that his opinion constituted a " 'work product' " of defendants. Following a verdict which left the defendants $42,500 short of the commissioners' award, the trial court granted defendants a new trial because " 'the disclosure to the jury of an additional appraiser  .  .  . having been employed together with failure of [defendants] to use said appraiser  .  .  . did possibly, if not probably, prejudice the jury.' " The state appealed from the order granting defendants a new trial. In affirming the judgment awarding the new trial, the Supreme Court said (484 S.W.2d at 295[3, 4]): "In so far as this case is concerned, [defendants' appraiser which they did not call] was available for plaintiff to call as its own witness. Plaintiff, if it so elects, should not be allowed to establish the prior employment of such witness by defendants during its case in chief. The defendants, during cross-examination, may decide not to establish the prior employment, however, if they elect to do so, they may bring out the fact of such employment and the termination thereof in an attempt to affect the credibility of such witness before the jury. If the first alternative is selected by defendants, argument relative to the prior employment of [defendants' appraiser which they did not call] would be improper. If defendants, however, bring out such fact while seeking to establish that the testimony of such witness should not be given any probative value, the same would be a subject for argument by either side."

■ In the instant matter, the trial court concluded, and we think erroneously, that

the restriction placed on the state by *Kalivas* applied only if revelation of Riebold's employment by defendants came during presentation of the state's case-in-chief. The trial court, as the state argued then and now, permitted the expert testimony of Riebold as a witness for the state because the disclosure of his hiring by defendants was established in the cross-examination of Mr. Swenson during defendants' case-in-chief. Seemingly the task in *Kalivas*, as appears from the complete text, was to seek a balance of the concept of "work product," preventing as it then did discovery of the conclusions of an opponent's expert, with the view that all witnesses who can aid the jury should be available to any party. This accommodation, of somewhat opposing concepts, would not be advanced by preventing disclosure of defendants' prior employment of the expert in the state's case-in-chief, while sanctioning disclosure of the very same information through cross-examination of a witness who testifies in the defendants' case-in-chief. To say that the state could not make it known to the jury that Riebold had been employed by defendant during its case-in-chief but condone the use of the expert by the state after the jury learns of the employment through cross-examination of a defendant, is placing form before substance. Or, to paraphrase defendants' brief, it is the disclosure to the jury of "the prior employment that is the poison apple, not when you bite it!" In our view, the overall evil to be avoided is establishing, during any phase of the trial, that the appraiser had been employed by the adversary. *State ex rel. State Highway Commission v. Crain*, supra, 496 S.W.2d at 870.

■■ We hasten to underscore that despite the "case-in-chief" language in *Kalivas*, the facts there are the same as the one before us, i.e., the disclosure of defendants' employment of the appraiser by defendants came through cross-examination of one of the defendants. Yet the grant of a new trial, based on prejudice to the defendants, was affirmed, a result which would not

square with a limitation of the nondisclosure rule to the state's case-in-chief. Also, regardless of when the disclosure is made, the option granted solely to defendants by *Kalivas* not to show their employment of the appraiser or to establish it on cross-examination to discredit his credibility, comes to naught. The neglect or failure of a party to call a witness within his power who has knowledge of the facts in issue is said to raise a strong presumption that the testimony would have been unfavorable and damaging to the party who fails to offer it, and such failure may be commented upon in argument.[1] However, the rule is limited. No such inference may be drawn and no unfavorable comment may be made by counsel on account of the nonproduction of a witness whose testimony is equally available to all the parties. *Bean v. Riddle*, 423 S.W.2d 709, 720–721[9, 10] (Mo.1968). Since *Kalivas* (484 S.W.2d at 295[3]) held that defendants' appraiser was available to the state as a witness, the limitation on the foregoing rule would appear applicable to silence the state, either via cross-examination or during its case-in-chief, in establishing the employment of the appraiser by defendants, thereby leaving it entirely to defendants' choice to make the disclosure vel non. The action of the trial court in permitting Riebold, over defendants' objections, to testify as a witness for the state when the jury knew he was employed but not produced by defendants, made an unfortunate situation acute which resulted in error prejudicial to the defendants.

The case must be retried. Hopefully the other errors, if so, complained of by defendants will not occur on retrial. Therefore, we eschew the chore of considering them at this time.

The judgment is reversed and the cause is remanded for a new trial.

### Addendum

Our disposition of the appeal renders moot defendants' motion to amend their brief on appeal which was taken with the case. Ergo, the motion is denied with our repeated admonition to all lawyers to con Rule 84.04, V.A.M.R., before undertaking to prepare a brief.

All concur.

---

1. In this, as in most eminent domain cases, the principal issue involved concerned the amount of defendants' damages. *Missouri State Park Board v. McDaniel*, 473 S.W.2d 774, 777 (Mo. App.1971).